593 So.2d 508 (1992)
John Errol FERGUSON, Appellant,
v.
STATE of Florida, Appellee.
No. 76458.
Supreme Court of Florida.
February 6, 1992.
*509 Richard H. Burr, III, New York City, and E. Barrett Prettyman, Jr., Sara-Ann Determan, Walter A. Smith, Jr., Steven J. Routh and Gregory A. Kalscheur of Hogan & Hartson, Washington, D.C., for appellant.
Robert A. Butterworth, Atty. Gen., and Fariba N. Komeily, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
John Errol Ferguson, a prisoner under eight sentences of death, sought postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. After an evidentiary hearing, the circuit court denied relief. Ferguson appeals. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Ferguson was convicted of six counts of murder for the execution-style killings of six people in Carol City. He was also convicted of two counts of murder for the killing of a young couple in Hialeah. In each case the jury recommended death on all counts, and the judge followed the jury's recommendation. This Court affirmed the convictions in both cases but remanded for reconsideration of the sentences by the judge because it could not be determined whether there had been a proper consideration of mitigating factors. Ferguson v. State, 417 So.2d 639 (Fla. 1982) (Carol City); Ferguson v. State, 417 So.2d 631 (Fla. 1982) (Hialeah). After a consolidated resentencing hearing, the trial court *510 again imposed all eight sentences of death. This Court affirmed on appeal. Ferguson v. State, 474 So.2d 208 (Fla. 1985).
We first address Ferguson's claims of ineffective assistance of counsel. In order to prevail on this claim, Ferguson must demonstrate that counsel's performance was deficient and that there is a reasonable probability that the result of the proceeding would have been different absent the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Ferguson claims that his counsel in the Carol City trial was ineffective for failing to investigate and present mitigating evidence of Ferguson's mental impairment and difficult childhood. At the evidentiary hearing below, Ferguson's counsel testified that he reviewed four psychiatric reports of doctors appointed to examine Ferguson when counsel initially filed an insanity plea. Counsel also spoke to the doctors and took the deposition of the doctor who could provide the most favorable testimony. Although counsel did not obtain any reports prepared by doctors who had examined Ferguson in the past, he must have been aware of the fact that Ferguson's mental problems dated back to 1971, since this information was revealed in the reports he did review.
Counsel also testified that he spoke to Ferguson's mother and to other family members. One of Ferguson's sisters was apparently reluctant to cooperate because she felt her job with the state attorney's office was jeopardized by her involvement in the case. Ferguson's mother was presented as a penalty phase witness. She testified that Ferguson was a good son, that he liked art and music, and that he helped support her when he was home. She also testified that Ferguson had mental problems and had been in a mental hospital.
In support of his 3.850 motion, Ferguson presented the testimony of several family members who had not testified at the original sentencing. This testimony indicated that Ferguson's childhood was difficult. His family was poor and moved around a lot, and his mother worked most of the time to support the children. His father was an alcoholic, who died when Ferguson was thirteen. The death of his father depressed Ferguson, and he began having run-ins with the law and problems in school. Ferguson's mother had many boyfriends, some of whom physically abused her in front of the children. Testimony was also presented that Ferguson was shot by a policeman; following this shooting Ferguson's behavior changed  he became paranoid and hostile.[1]
The circuit judge found that counsel did conduct a reasonable investigation into Ferguson's family background and mental history and that his performance was not deficient. Although counsel did not exhaust all available sources of information by obtaining additional doctor's reports, hospital records, school records, or court records, this was not a case in which the attorney conducted only minimal investigation. Counsel interviewed family members and presented the testimony of Ferguson's mother. He was aware of Ferguson's mental problems, having reviewed reports prepared at his request and having interviewed the doctors who examined his client. The circuit judge concluded that counsel had made a tactical decision not to call the doctors as witnesses. Counsel had the information before him and could have reasonably decided that presenting mental illness testimony would have opened the door to extremely damaging State rebuttal. Several doctors indicated that they believed Ferguson was malingering, that he was a sociopath, not schizophrenic, and that he was a very dangerous person. Instead of opening the door to this evidence, counsel informed the jury of Ferguson's mental condition through the testimony of Ferguson's mother, who discussed the fact that he had mental problems and had been in a mental hospital. This was a reasonable strategy in light of the negative aspects of the expert testimony. We affirm the circuit *511 court's finding that Ferguson has failed to establish that the performance of his Carol City trial counsel was deficient.
Ferguson's claim that his Hialeah trial counsel was ineffective is similar, in that it is also based on counsel's alleged lack of investigation and presentation of mitigating evidence of Ferguson's mental illness and poor childhood. Ferguson also argues that his counsel was ineffective for failing to object during the prosecutor's closing argument and for making an inadequate closing argument himself.
In the penalty phase of the Hialeah trial, no mitigating evidence was presented by the defense. Ferguson asserts that counsel should have put on mental mitigating evidence. Unlike the Carol City case, Ferguson does not claim here that counsel failed to investigate the extent of his mental illness. At the guilt phase of the trial, the defense claimed that Ferguson was insane, and numerous experts testified extensively as to Ferguson's mental problems. Counsel was fully aware that the standard for finding the statutory mitigating circumstances[2] to be applicable is lower than the M'Naghten insanity standard. Obviously if defense experts thought Ferguson met the higher standard for insanity they also believed he met the lower standard for statutory mitigation. In his penalty phase closing, counsel argued that the statutory mental mitigating factors applied to Ferguson, noting that even the State's experts agreed that Ferguson had a serious mental illness. Counsel testified at the hearing below that he and cocounsel considered putting the doctors on again and concluded that it would be cumulative. Counsel cannot be faulted for not recalling his experts at the penalty phase or parading still more experts in front of the jury.
We also find no deficiency in counsel's failure to present evidence of Ferguson's family background. Counsel was in touch with members of Ferguson's family. Ferguson's mother was called to the witness stand in the penalty phase. She was unable to testify when she became hysterical and nearly fainted, and counsel chose to remove her from the stand. Although counsel could have asked for a continuance to allow Ferguson's mother to compose herself, the decision to withdraw this witness was certainly reasonable in light of her emotional state. There was no connotation that she was removed because she could have nothing good to say about her son.
Ferguson's assertion that counsel's closing argument was deficient is also without merit. Although in hindsight one can speculate that a different argument may have been more effective, counsel's argument does not fall to the level of deficient performance simply because it ultimately failed to persuade the jury. The circuit judge described the argument as "emotional and comprehensive, with the strategy to relay to the jury that the Defendant was mentally ill, and it was not the policy of the State or humanity to be executing people who are mentally ill ... a credible argument asking for mercy." This argument clearly falls within the "wide range of professionally competent assistance." See Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
We also reject Ferguson's argument as to counsel's failure to object to statements in the prosecutor's closing. The decision not to object is a tactical one. Although some of the prosecutor's remarks were objectionable, he did not dwell on these inappropriate comments, nor were they so severely inflammatory or damaging as to render counsel's silence deficient performance.
While we have concluded that counsel did not render ineffective assistance in either case, we also hold that Ferguson did not meet his burden under the second prong of the Strickland test. In other words, even if it could be said that counsel *512 was ineffective, there is no reasonable probability that the result would have been different, in the absence of any deficient performance.
We next address Ferguson's claims that the instructions given in the penalty phases of his trials violated his rights under Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). There, the Supreme Court held that the jury must not be led to believe that nonstatutory mitigating evidence cannot be considered in capital sentencing.
In the Carol City trial, the judge instructed the jury as follows:
The aggravating circumstances which you may consider are limited to such of the following as may be established by the evidence ... [listing the statutory aggravating factors]. The mitigating circumstances which you may consider, if established by the evidence, are these ... [listing the statutory mitigating factors].
The aggravating circumstances which you may consider are limited to those upon which I have just instructed you. However, there is no such limitation upon the mitigating factors which you may consider. (Emphasis added.)
An instruction virtually identical to this instruction was given in Adams v. State, 543 So.2d 1244 (Fla. 1989). This Court rejected Adams' Hitchcock claim, finding that "[i]n view of the instruction which was given, we are convinced that the jury was not misled concerning its ability to consider nonstatutory mitigating circumstances... ." Id. at 1248. Ferguson argues that Adams is distinguishable because in that case the judge decided to give the instruction after the prosecutor argued in his closing that only statutory mitigation could be considered. Here, the instruction was given after previous instructions by the court itself had implied that only statutory mitigation could be considered. Although we agree that the motivation for giving the curative instruction may have been different in Adams, this does not change the effect of the instruction. As in Adams, the jury here was clearly instructed that they were not limited to consideration of the statutory mitigating circumstances, and there was no Hitchcock error.
In the Hialeah case, the State has conceded that the instructions given were improper because they failed to adequately explain that the jury could consider nonstatutory mitigating evidence. Therefore, our consideration of Ferguson's argument that Hitchcock error entitles him to a new sentencing requires us to determine whether this error was harmless beyond a reasonable doubt.
The circuit court found the Hitchcock error to be harmless. The Hialeah jury had before it extensive evidence of Ferguson's mental problems from the expert testimony at the guilt phase, but did not find the evidence significant enough, when compared to the evidence in aggravation, to recommend a life sentence. The additional mitigating evidence presented at the 3.850 hearing was relatively insignificant. Although Ferguson's family was poor and somewhat unstable, his mother did her best to provide for the children, and there was no testimony that Ferguson himself was beaten or abused.
This mitigation is especially insignificant in light of the heinous nature of the killings in this case and the overwhelming aggravating factors. We discussed these murders in detail in our opinion on direct appeal.
The facts reveal that the two victims were seated in an automobile and while seated therein a gunshot was fired through the window striking Brian Glenfeld in the arm and chest area. A significant amount of bleeding followed and this victim's blood was found throughout many areas of the front of the automobile as well as on the clothing of Belinda Worley. Following the shooting, the female victim ran many hundreds of feet from the car in an attempt to allude [sic] the defendant and was finally overtaken in some rather dense overgrowth and trees. She was subjected to many physical abuses by this defendant, including but not limited to, sexual penetration of her vagina and anus. The discovery of *513 embedded dirt in her fingers, on her torso both front and back and in many areas within her mouth and the findings of hemorrhaging around her vagina and anal cavity would indicate that she put up a significant struggle and suffered substantially during the perpetration of these indignities upon her body. Expert testimony indicates that she was a virgin at the time of the occur[r]ence of this crime. The position of her body and the location of the wounds on her head would indicate that she was in a kneeling position at the time she was shot through the top of the head. She was left in a partially nude condition in the area where the crime was committed to be thereafter fed upon by insects and other predators. Physical evidence would substantiate that following the attack upon Belinda Worley the defendant went back to the car and shot Brian Glenfeld through the head.
Ferguson, 417 So.2d at 636. The following aggravating circumstances were found: (1) Ferguson had committed three prior violent felonies;[3] (2) the murders were committed in the course of a robbery; (3) the murders were committed to avoid lawful arrest; (4) the murders were especially heinous, atrocious, or cruel; and (5) the murders were cold, calculated, and premeditated.
We affirm the circuit court's finding that the Hitchcock error was harmless. Even if the nonstatutory mitigating evidence introduced at the 3.850 hearing had been presented and the jury had been specifically told it should consider nonstatutory mitigation in the weighing process, we are convinced beyond a reasonable doubt that the outcome would be the same.
Ferguson also raises the following claims: (1) these proceedings should be stayed pending another determination that Ferguson is competent to proceed; (2) the State failed to correct knowingly false testimony at the Carol City penalty phase; (3) the State failed to disclose impeachment evidence; (4) trial counsel was ineffective for failing to object to the prosecutor's use of peremptory challenges in both trials; and (5) the circuit judge erred in finding several of Ferguson's claims to be procedurally barred. These claims are without merit and may be summarily denied.
For the foregoing reasons, we affirm the denial of Ferguson's 3.850 motion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We note that the admission of this evidence would have allowed the jury to hear the circumstances behind the shooting, which were not favorable to Ferguson.
[2] § 921.141(6)(b) (the defendant was under the influence of extreme mental or emotional disturbance); (6)(f) (the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired), Fla. Stat. (1977).
[3] Assault with intent to commit rape; robbery; and resisting an officer with violence.