789 So.2d 306 (2001)
John Errol FERGUSON, Appellant,
v.
STATE of Florida, Appellee.
No. SC96658.
Supreme Court of Florida.
May 10, 2001.
*307 Kathryn W. Bradley, E. Barrett Prettyman, Jr., Sara-Ann Determan and Kristen A. Donoghue of Hogan & Hartson, L.L.P., Washington, DC, for Appellant.
Robert A. Butterworth, Attorney General, and Barbara J. Yates, Assistant Attorney General, Tallahassee, FL; and Fariba N. Komeily, Assistant Attorney General, Miami, FL, for Appellee.
PER CURIAM.
John Errol Ferguson, an inmate under sentence of death, appeals an order entered *308 by the trial court summarily denying his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons that follow we affirm the summary denial of Ferguson's postconviction motion.

PROCEEDINGS TO DATE
In 1982 this Court affirmed Ferguson's convictions but vacated sentences of death imposed on two counts of first-degree murder for the killing of a young couple in Hialeah (Hialeah murders), and six counts of first-degree murder for the killing of six people in Carol City (Carol City murders). Ferguson v. State, 417 So.2d 631 (Fla. 1982); Ferguson v. State, 417 So.2d 639 (Fla.1982). This Court vacated the sentences of death based on the trial court's use of the wrong standard in assessing the applicability of two mitigating factors involving Ferguson's mental state and ability to appreciate the criminality of his conduct. See Ferguson, 417 So.2d at 638; Ferguson, 417 So.2d at 645.[1] On resentencing, Ferguson was again sentenced to death in both cases and this Court affirmed. Ferguson v. State, 474 So.2d 208 (Fla.1985).
Ferguson filed his initial 3.850 motion on October 15, 1987, raising six claims.[2] Thereafter, on December 1, 1987, Ferguson filed a motion seeking a stay of his postconviction proceedings based on his alleged incompetence to understand and assist counsel or, alternatively, a competency hearing. The trial court, after holding several hearings and appointing numerous experts to examine Ferguson, denied the motion to stay on February 27, 1989, finding Ferguson competent to proceed. As an alternative basis, the trial court, pursuant to Jackson v. State, 452 So.2d 533 (Fla.1984), concluded that competency was not an issue for a court to address in postconviction relief.
On September 8, 1989, Ferguson filed a supplement to his postconviction motion, supplementing his original claims and raising new ones. The trial court summarily denied several of Ferguson's claims and denied the remaining claims following an evidentiary hearing.
On appeal, in addition to arguments relating to the trial court's denial of his substantive claims, Ferguson argued that he was entitled to a competency determination as a matter of law and that the trial court's competency finding was not supported by the record.[3] This Court affirmed *309 the trial court's denial of Ferguson's motion for postconviction relief. Ferguson v. State, 593 So.2d 508 (Fla.1992). Of particular relevance to the instant proceedings, this Court disposed of Ferguson's request for a stay of his postconviction proceedings pending a determination of his competency in a paragraph addressing summarily denied claims:
Ferguson also raises the following claims: (1) these proceedings should be stayed pending another determination that Ferguson is competent to proceed; (2) the State failed to correct knowingly false testimony at the Carol City penalty phase; (3) the State failed to disclose impeachment evidence; (4) trial counsel was ineffective for failing to object to the prosecutor's use of peremptory challenges in both trials; and (5) the circuit judge erred in finding several of Ferguson's claims to be procedurally barred. These claims are without merit and may be summarily denied.
Ferguson, 593 So.2d at 513 (emphasis added).
On July 14, 1999, Ferguson filed the instant motion to reinstate several of the claims raised in his initial 3.850 motion and seeking a stay of his postconviction proceedings so that a competency hearing could be held, arguing that this Court's decision in Carter v. State, 706 So.2d 873 (Fla.1997), constituted a fundamental change in the law warranting retroactive application.[4] In Carter, this Court held that a court must hold a competency hearing in postconviction proceedings "when there are reasonable grounds to believe that a capital defendant is incompetent to proceed in postconviction proceedings in which factual matters are at issue, the development or resolution of which require the defendant's input." Id. at 875.
The trial court, after hearing argument on Ferguson's motion on August 18, 1999, denied the motion, finding that Ferguson was attempting to relitigate issues previously decided against him as he had received a full and fair evidentiary hearing on his competency in his initial postconviction motion. The trial court did not address the retroactivity of Carter.
Ferguson now appeals the denial of his motion arguing that he is entitled to an additional competency determination in light of Carter, or, alternatively, that this Court revisit the prior competency determination and hold Ferguson incompetent on the basis of the record developed in Ferguson's initial postconviction motion.

CARTER'S RETROACTIVITY
For a new rule of law to warrant retroactive application it must satisfy three elements: "The new rule must (1) originate in either the United States Supreme Court or the Florida Supreme Court; (2) be constitutional in nature; and (3) have fundamental significance." State v. Callaway, 658 So.2d 983, 986 (Fla.1995), receded from in part on other grounds, Dixon v. State, 730 So.2d 265 (Fla.1999); see Witt v. State, 387 So.2d 922, 929-30 (Fla.1980).
In Carter, this Court heard an interlocutory appeal from the trial court's ruling *310 that Carter was entitled to a competency determination to the extent Carter demonstrated specific factual matters requiring him to competently consult with counsel. 706 So.2d at 874. We agreed with the trial court's holding that "a judicial determination of competency is required when there are reasonable grounds to believe that a capital defendant is incompetent to proceed in postconviction proceedings in which factual matters are at issue, the development or resolution of which require the defendant's input." Id. at 875.
In so holding, this Court departed from its decision in Jackson v. State, where we rejected Jackson's claim that he was entitled to a judicial determination of his competency to understand and assist counsel in his postconviction proceedings under sections 916.11 and 916.12, Florida Statutes (1983), and Florida Rule of Criminal Procedure 3.210. 452 So.2d at 537. This Court found Jackson's argument under the criminal statutes and rules unavailing, noting the civil nature of a 3.850 motion:
This reliance is misplaced, however, because the statutes and the rule both address the issue of a judicial determination of competency related to criminal trial proceedings. These do not apply to a 3.850 motion because the designation of the criminal procedure rule is a misnomer in that the proceeding is civil in nature, rather than criminal, and is likened to a combination of the common law writ of habeas corpus and motion for writ of error coram nobis. Therefore we hold that appellant is not entitled to a judicial determination of his competency to assist counsel either in preparing a 3.850 motion or a petition for writ of habeas corpus.
Id. at 536-37 (citations omitted).[5]
In Carter, this Court did not expressly rest its decision on a constitutional ground. The State argues that the absence of such constitutional language precludes characterization of Carter as a decision of constitutional import. Our omission of an express constitutional basis for our decision in Carter, however, is not fatal to Ferguson's claim. While the failure to express a constitutional foundation is undoubtedly relevant in the retroactivity determination, it is not dispositive. See State v. Callaway, 658 So.2d 983, 986 (Fla.1995) (retroactively applying Hale v. State, 630 So.2d 521 (Fla.1993), despite this Court's failure to mention any constitutional basis for its decision in Hale and concluding that Hale implicated a defendant's due process rights and constitutional liberty interests); see also State v. Stevens, 714 So.2d 347, 349 (Fla. 1998) (Harding, J., concurring) ("I would resolve this conflict by holding that the `constitutional in nature' prong of the Witt test does not require that the opinion in question be decided on constitutional grounds.").[6]
*311 Although we omitted an express constitutional basis from our discussion in Carter, we emphasized that our holding was aimed at ensuring the meaningfulness of postconviction proceedings:
There can be no question that a capital defendant's competency is crucial to a proper determination of a collateral claim when the defendant has information necessary to the development or resolution of that claim. Unless a death-row inmate is able to assist counsel by relaying such information, the right to collateral counsel, as well as the postconviction proceedings themselves, would be practically meaningless.
706 So.2d at 875. At the root of this Court's concern in that regard are considerations of due process, considerations which have previously guided this Court's hand in the postconviction arena. Cf. Steele v. Kehoe, 747 So.2d 931, 934 (Fla. 1999) (holding that "due process entitles a prisoner to a hearing on a claim that he or she missed the deadline to file a rule 3.850 motion because his or her attorney had agreed to file the motion but failed to do so in a timely manner"); State v. Weeks, 166 So.2d 892, 896 (Fla.1964) (holding that due process requires the appointment of counsel in postconviction proceedings if the trial court determines that the petitioner's claims are meritorious and if the potential complexity of the hearing warrants the appointment of counsel and concluding that "[postconviction] remedies are subject to the more flexible standards of due process announced in the Fifth Amendment, Constitution of the United States").[7] With this constitutional pedigree in mind, we conclude that our holding in Carter was constitutional in nature.
Nevertheless, to qualify for retroactive application Carter must be a decision of fundamental significance. As emphasized by this Court in Witt, "only major constitutional changes of law will be cognizable in capital cases under Rule 3.850." 387 So.2d at 929. These major constitutional changes in the law typically fall into one of two categories: "(1) those which place beyond the authority of the state the power to regulate certain conduct or to impose certain penalties, or (2) those changes which meet the threeprong test for retroactivity set forth in Stovall v. Denno." McCuiston v. State, 534 So.2d 1144, 1146 (Fla.1988) (citations omitted).
The three factors considered under the test announced in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), are: "(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of a retroactive application of the new rule." McCuiston, 534 So.2d at 1146 n. 1.
As previously noted, the rule announced in Carter was aimed at ensuring meaningful postconviction proceedings. 706 So.2d at 876. Turning to the second prong, the extent of reliance on the old rule, this Court's decision in Jackson has not been relied on extensively. In fact, Medina v. State, 690 So.2d 1241, 1248 (Fla.1997), is the only reported case citing Jackson for the proposition that a defendant is not entitled to a determination of competency in postconviction proceedings.
*312 In Medina, the defendant sought a determination of his competence to proceed in the postconviction proceedings. The trial court made alternative rulings. First, the trial court found Jackson controlling. Second, the court held Medina competent after hearing the testimony of several State experts and reports of other experts offered by the State and defense. On appeal, this Court refused to revisit Jackson, reasoning that Medina failed to demonstrate the need for a competency hearing given his failure to raise an issue in his postconviction motion warranting an evidentiary hearing:
We find no basis in this case to revisit our decision in Jackson. This was a successive rule 3.850 proceeding, and until there was a determination that there was an issue that warranted an evidentiary hearing, Medina was clearly not entitled to a competency determination for the purpose of counsel proceeding to a Huff hearing.
Id. This Court also ruled that the trial court was within its discretion in finding Medina competent to proceed on the record before it.
Stovall's final prong focuses on the effect the retroactive application of the new rule would have on the administration of justice. This final consideration in the retroactivity equation requires a balancing of the justice system's goals of fairness and finality: "Deciding whether a change in decisional law is a major constitutional change or merely an evolutionary refinement is reflective of the balancing process between these two important goals [fairness and finality] of the criminal justice system." State v. Glenn, 558 So.2d 4, 6-7 (Fla.1990). The balance often weighs in favor of finality: "In practice, because of the strong concern for decisional finality, this Court rarely finds a change in decisional law to require retroactive application." Id. at 7. However, the considerations which normally tip the scales in favor of decisional finality need not be given their usual weight where, as here, the relief Carter affords does not upset the finality of a conviction and sentence, but instead touches on the quality of postconviction relief available to a petitioner.
Moreover, Carter has limited applicability, further negating any risk that its retroactive application would "destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit." Witt, 387 So.2d at 929-30. First, Carter applies solely to capital defendants. 706 So.2d at 875. Second, it only applies to capital defendants who allege grounds sufficient to give the trial court cause to reasonably question their competency to proceed. Id. Further, a competency determination of such defendants is only required to the extent the postconviction motion contains factual matters which require the defendant's input. Id. Accordingly, if such a defendant raises purely legal claims in a postconviction motion, no competency determination would be required: "If a postconviction defendant is found incompetent, claims raising purely legal issues that are of record and claims that do not otherwise require the defendant's input must proceed." Id. at 876.
Although we have concluded that Carter qualifies for retroactive application, its application to the instant case is complicated by the proceedings held by the trial court in Ferguson's initial postconviction motion and this Court's review of those proceedings on appeal.

PROCEEDINGS IN FERGUSON'S INITIAL 3.850
In his initial motion for postconviction relief Ferguson moved for a stay of the *313 proceedings based on his alleged incompetence to understand and assist counsel or, alternatively, a hearing to determine his competence. The trial court eventually ordered several physical examinations of Ferguson with regards to his competency, including an MRI, CAT scan, EEG, and blood tests. Additionally, the trial court appointed two psychiatrists, Drs. Lloyd Miller and William Corwin, and a psychologist, Dr. Leonard Haber, to examine Ferguson.[8] Thereafter, on August 24, 1988, the court held an extensive evidentiary hearing spanning three days to determine Ferguson's competence to assist counsel in the postconviction proceedings.
At the hearing the defense produced the testimony of two experts, Drs. James Merkikangas and Jeffrey Elenewski. Dr. Merkikangas, an expert in psychiatry and neurology, examined Ferguson on January 30, 1988, and August 23, 1988. Merkikangas ordered a CAT scan, MRI, and EEG of Ferguson following his initial interview. Those tests, according to Merkikangas, showed no signs that Ferguson was suffering from a progressive neurological disease, but did provide some indications of organic brain damage. Merkikangas, detailing Ferguson's paranoid and delusional behavior during his interviews, diagnosed Ferguson as a paranoid schizophrenic. Based on that diagnosis, Merkikangas concluded that Ferguson was not competent to assist counsel in the postconviction proceedings. Merkikangas also opined that Ferguson was not malingering.
Dr. Jeffrey Elenewski, an expert in forensic psychology, similarly testified on the strength of two examinations of Ferguson on August 10, 1978, and January 14, 1988. Elenewski testified that Ferguson was suffering from paranoia and delusions rendering him incompetent to assist counsel. Like Merkikangas, Elenewski concluded that Ferguson was not malingering.
Dr. William Corwin, an expert in forensic psychiatry, examined Ferguson twice in 1974 and once in 1988. Although Corwin found Ferguson's behavior consistent with paranoid schizophrenia, he felt that Ferguson consciously exaggerated some of his behavior. Nevertheless, Corwin concluded that Ferguson's condition effectively prevented him from communicating with his attorney and assisting in his defense.
Forensic psychologist Dr. Leonard Haber testified that Ferguson's condition was not credible. Specifically, Haber found Ferguson's difficulty with memory inconsistent with the negative results obtained from the neurological tests performed on Ferguson. In sum, Haber concluded that Ferguson displayed a selective memory which was consistent with a finding of malingering. Accordingly, Haber opined that Ferguson was competent to assist counsel. Dr. Lloyd Miller, a forensic psychiatrist, similarly concluded that Ferguson was malingering on the basis of his selective memory.
Dr. Peritz Scheinberg, an expert in neurology, testified that Ferguson did not suffer from any neurological abnormality.
In addition to this expert testimony, the State produced the testimony of five corrections officers who had opportunities to observe and interact with Ferguson. The officers all testified to observations of behavior which appeared inconsistent with *314 the delusions Ferguson was allegedly suffering from. Further, the officers indicated that Ferguson would only act irrationally, i.e., consistent with the findings of paranoid schizophrenia, shortly before and after mental evaluations.
Finally, David Clark, an institutional counselor at the Florida State Prison, and Frank Norwich, a document examiner from the Metro Dade Police Department, testified that Ferguson was the likely author of several letters directed to the trial court. Drs. Haber and Miller opined that the level of thought and organization exhibited in the letters in question were inconsistent with Ferguson's portrayal of his condition.
On this record, the trial court, using the standard for competency to stand trial outlined in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), found Ferguson competent to proceed. Specifically, the court found that the credible evidence at the hearing demonstrated that Ferguson was malingering. As an alternative ground for denying Ferguson relief, the trial court, under the authority of Jackson, found that competency was not an issue for the court to address when a motion for postconviction relief is filed.
On the basis of this record the State argues that Ferguson received the benefit of Carter in his initial postconviction motion. Ferguson responds by maintaining that he cannot be collaterally estopped from relitigating his competency because the trial court's competency finding was made in the alternative, and, furthermore, this Court failed to address the trial court's factual finding of competency on appeal. While we agree with the State that Ferguson received the benefit of Carter in his initial postconviction motion, the issue is complicated by our failure to address the trial court's factual determination in our review of the trial court's denial of Ferguson's initial 3.850 motion.
On appeal of the trial court's denial of Ferguson's initial 3.850 motion, Ferguson appealed the trial court's alternative holdings on his competency. This Court, however, did not address the propriety of the trial court's factual determination on the record. Instead, this Court concluded that Ferguson's claim that his postconviction proceedings should be stayed pending a competency determination lacked merit and "may be summarily denied." Ferguson, 593 So.2d 508, 513.
Given our apparent failure to review the trial court's finding on competency and our conclusion as to Carter's retroactivity, we review the trial court's factual determination as to Ferguson's competency anew. See Dow Chemical v. United States Envtl. Protection Agency, 832 F.2d 319, 323 (5th Cir.1987) ("The federal decisions agree than once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision."). To do otherwise would be unfaithful to this Court's solemn constitutional responsibility to review capital cases. As we have consistently stated with regards to our proportionality review in capital cases: "[P]roportionality review in death cases rests at least in part on the recognition that death is a uniquely irrevocable penalty, requiring a more intensive level of judicial scrutiny or process than would lesser penalties." Tillman v. State, 591 So.2d 167, 169 (Fla.1991) (emphasis added); see also Hauser v. Moore, 767 So.2d 436, 438 (Fla. 2000) (Shaw, J., dissenting) ("[T]he validity of the trial court's competency decision in the present case has never been subjected to appellate review. The State has cited no case where a trial court's competency decision concerning a death-sentenced inmate *315 has not been subject to appellate review.").
As noted earlier, the trial court judged Ferguson's competency under the standard applicable to the determination of whether a defendant is competent to stand trial, i.e., "whether the defendant `has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as a factual understanding of the proceedings against him.'" Hardy v. State, 716 So.2d 761, 763 (Fla.1998) (quoting, Dusky, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824). In Carter this Court indicated that the rules governing competency to stand trial should govern the issue of competency to proceed in postconviction: "Until such time as the Florida Rules of Criminal Procedure are amended to specifically address competency during capital collateral proceedings, the rules for raising and determining competency at trial should be looked to." 706 So.2d at 876 (footnote omitted).
We review a trial court's findings as to a defendant's competence to stand trial under an abuse of discretion standard. See Hardy, 716 So.2d at 764; see also Medina, 690 So.2d at 1248 (finding no abuse of discretion in the trial court finding that the petitioner was competent to proceed in the postconviction proceedings). Upon reviewing the record of the extensive competency hearing conducted by the trial court on Ferguson's initial postconviction motion, we find no abuse of discretion.
While the testimony at the competency hearing was conflicting as to the genuineness of Ferguson's condition, the trial court's rejection of the opinions offered by the defense experts was supported by the testimony of Drs. Corwin, Haber, and Miller, all of whom opined that Ferguson was malingering and exaggerating his condition. These findings that Ferguson was exaggerating and malingering were further corroborated by the testimony of the corrections officers who indicated that Ferguson would only act irrationally shortly before and after he was scheduled to undergo mental evaluations. Finally, the neurological examinations ordered by the trial court revealed that Ferguson was not suffering from an organic brain disease. Given this record, we find no basis to quarrel with the trial court's determination. See Hardy, 716 So.2d at 764 ("In situations where there is conflicting expert testimony regarding the defendant's competency, it is the trial court's responsibility to consider all the evidence relevant to competency and resolve the factual dispute.").
Accordingly, we affirm the trial court's summary denial of Ferguson's 3.850 motion.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, C.J., concurs in result only with an opinion.
WELLS, C.J., concurring in result only.
I concur with the result in this case. I do not concur that Carter v. State, 706 So.2d 873 (Fla.1997), should be applied retroactively.
First, as is stated in the majority opinion, a decision as to the retroactivity of Carter is not necessary to the resolution of this successive motion.
Second, a decision that a 1997 decision is going to be applied retroactively to proceedings which have long been ongoing will simply confuse and frustrate the process, which I conclude is bad policy.
NOTES
[1] One of the issues raised by Ferguson on direct appeal was the trial court's finding that Ferguson was competent to stand trial. This Court found adequate evidence to support the trial court's finding. Ferguson, 417 So.2d at 634.
[2] Ferguson, through his mother, Dorothy Ferguson, as next friend, raised five claims applicable to both cases: (1) trial court's failure to conduct fair and reasonable inquiry into Ferguson's competence to stand trial; (2) ineffective assistance of counsel due to their failure to investigate and present sufficient evidence concerning Ferguson's incompetence; (3) trial court's improper limitation on the jury's and the judge's consideration of nonstatutory mitigating circumstances in violation of Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); (4) ineffective assistance of counsel in the investigation and presentation of nonstatutory mitigating circumstances; and (5) denial of a fair and reliable sentencing determination in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In his sixth and final claim, Ferguson claimed that the State, in the prosecution of the Carol City Murders, withheld evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[3] On April 1, 1991, while his appeal was pending, Ferguson moved this Court for a stay of the proceedings so that further competency hearings could be conducted in the trial court. Ferguson sought the stay on the basis of a hearing held on February 22, 1991, at the Florida State Prison in Starke, in which the State presented psychiatric testimony indicating that Ferguson suffered from paranoid schizophrenia resulting in Ferguson's commitment to a correctional mental health institution. This Court denied the motion on April 19, 1991.
[4] In his motion, Ferguson sought to reinstate the claims raised in his initial postconviction motion under Brady, Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), and Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), claiming that his assistance was necessary to develop the factual predicate for those claims.
[5] Justice Overton specially concurred, concluding that Jackson had not established any prejudice flowing from the trial court's rejection of Jackson's claim given Jackson's failure to demonstrate any specific factual matters raised in his postconviction motion necessitating his assistance. Id. (Overton, J. specially concurring). We adopted Justice Overton's view in Carter. Carter v. State, 706 So.2d at 876.
[6] Justice Harding further explained:

Indeed, many opinions by this Court are decided on nonconstitutional grounds, even if a constitutional claim may have merit. This is due to the principle that courts will avoid reaching a constitutional issue in a case when the decision can be made on other grounds. It follows that if a decision were required to be decided on constitutional grounds in order to meet the second prong of the Witt test, this Court would be precluded from giving retroactive application to decisions which are clearly constitutional in nature but were mandatorily decided on other grounds.
Stevens, 714 So.2d at 349 (Harding, J., concurring) (citation omitted).
[7] See also Williams v. State, 777 So.2d 947 (Fla.2000) (extending Steele to allow the filing of a belated appeal from the denial of a 3.850 motion where counsel neglects to timely file an appeal despite a timely request by the petitioner).
[8] The trial court originally appointed Drs. Harry Graff, Charles Mutter, and Albert Jaslow to examine Ferguson. Those doctors attempted to interview Ferguson on December 24, 1987, without notifying defense counsel. At a February 1, 1988, hearing the defense claimed that the court should not consider the reports prepared by those doctors given the State's failure to notify the defense of the examinations. Subsequently on February 19, 1988, the court ordered the instant examinations.