*32 PARIENTE, J.,
concurring in part and dissenting in part.
Our recent decision in Hurst[25] is undoubtedly a decision of fundamental constitutional significance based not only on the United States Supreme Court’s decision in Hurst v. Florida,[26] but also on Florida’s separate constitutional right to trial by jury under article I, section 22, of the Florida Constitution. Not only did the United States Supreme Court hold that Florida’s capital sentencing scheme was unconstitutional based on the Sixth Amendment to the United States Constitution, but this Court also held in Hurst that capital defendants are entitled to unanimous jury findings of each aggravating factor, that the aggravating factors are sufficient to impose death, and that the aggravating factors outweigh the mitigating circumstances and a unanimous jury recommendation of death as part of Florida’s constitutional right to a trial by jury under article I, section 22, of the Florida Constitution. Hurst, 202 So.3d at 44.
Applying decisions of fundamental constitutional significance retroactively to defendants in similar circumstances is essential to “ensuring fairness and uniformity in individual adjudications.” Witt v. State, 387 So.2d 922, 925 (Fla. 1980).[27] This Court has always recognized that “death is different,” so we must be extraordinarily vigilant in ensuring that the death penalty is not arbitrarily imposed,[28] Therefore, I dissent from the majority’s holding not to apply Hurst retroactively to all death sentences that were imposed under Florida’s unconstitutional capital sentencing scheme.[29]
In Hurst, we emphasized the importance of unanimity in jury decisions, stating: “If death is to be imposed, unanimous jury sentencing recommendations, when made in conjunction with the other critical findings unanimously found by the jury, provide the highest degree of reliability in meeting these constitutional requirements in the capital sentencing process.” 202 So.3d at 60. In fact, the majority acknowledges the importance of our holding in Hurst:
[T]he ultimate decision of whether a defendant lives or dies rests on these factual findings, only strengthening the purpose of the new rule. Both this Court and the Supreme Court have recognized that “death is different.” See, e.g., Yacob v. State, 136 So.3d 539, 546 (Fla. 2014) (quoting Fitzpatrick v. State, 527 So.2d 809, 811 (Fla. 1988)); Ring, 536 U.S. at 605, 122 S.Ct. 2428. Thus, in death cases, this Court has taken care to ensure all necessary constitutional protections are in place before one forfeits his or her life, and the purpose of the new rule weighs in favor of applying Hurst v. Florida retroactively to Asay.
Majority op. at 17-18.
The majority’s decision will have an immediate effect on Asay, who is the subject *33 of a pending death warrant. Majority op. at 5-6. In my view, by limiting the retroac-tivity of the rights explained in Hurst v. Florida and Hurst, the majority discounts the significance of the unanimity requirement imposed by this Court’s holding in Hurst and applied in our holding in Perry v. State, 41 Fla. L. Weekly S449, 210 So.3d 630, 2016 WL 6036982 (Fla. Oct. 14, 2016), invalidating Florida’s revised 2016 death penalty sentencing statute for its failure to require unanimity in the jury’s final recommendation of death. While I cannot agree with Justice Perry’s interpretation and application of section 775.082(2), Florida Statutes, which would reduce every final death sentence to life after Hurst v. Florida, I agree that a faithful application of the Witt test for retroactivity compels full retroactivity of Hurst. A faithful Witt analysis includes consideration of the uniqueness and finality of the death penalty, together with the fundamental constitutional rights at stake when the State sentences someone to death—namely the right to trial by jury and sentencing by a unanimous jury as guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 22, of the Florida Constitution.
Ultimately, when applying the retroac-tivity equation of balancing “the justice system’s goals of fairness and finality” in this circumstance, fairness must prevail over finality. Ferguson v. State, 789 So.2d 306, 312 (Fla. 2001). I recognize, as does the majority, the victims and their families’ “need for finality” but stress, as does Justice Perry in his dissent, that no conviction shall be disturbed. Majority op. at 22; see Asay, No. SC16-223, op. at 39 (Perry, J., dissenting). The question is not of guilt or innocence but, rather, of life or death.
A retroactivity analysis under Witt consists of three prongs. Witt, 387 So.2d at 931. The majority opinion explains how the Hurst v. Florida decision meets the first two prongs of a Witt retroactivity analysis; it undoubtedly emanates from the United States Supreme Court and is clearly constitutional in nature. Majority op. at 16-17; see Witt, 387 So.2d at 931. Likewise, our opinion in Hurst interpreted the United States Supreme Court’s opinion in Hurst v. Florida and Florida’s own constitutional right to jury trial. See art. I, § 22, Fla. Const. As to the third prong of the Witt analysis, I conclude, as I explain below, that the requirement of jury unanimity in the ultimate decision as to whether a defendant is sentenced to death is of such fundamental significance that fairness requires us to also apply Hurst retroactively to all capital defendants in Florida. This third prong, which asks whether the decision is of sufficient magnitude to require retroactive application, is reviewed under the three factors of the Stovall [30]/Linkletter[31] test: examining the purpose of the rule, the extent of reliance on the prior rule, and the effect of retroactive application of the new rule on the administration of justice. Witt, 387 So.2d at 926 (citations omitted).
As to the importance of the right to trial by jury, the majority appropriately explains that the purpose to be served by the rule weighs in favor of applying Hurst retroactively:
The importance of the right to a jury trial has been recognized since this country’s inception and is the only right to appear in both the body of the Constitution and the Bill of Rights. Art. III, § 2, U.S. Const.; U.S. Const. amend. VI. In fact, in the very line of cases at *34 issue here, the United States Supreme Court has recognized that the right to a jury’s determination of all the elements of an offense is of utmost importance, thereby changing its previous position that “sentencing considerations” were an exception to the rule. See Apprendi, 530 U.S. at 476, 120 S.Ct. 2348 (“At stake in this case are constitutional protections of surpassing importance.”); see also Ring, 536 U.S. at 609, 122 S.Ct. 2428 (“Because ... aggravating factors operate as ‘the functional equivalent of an element of a greater offense,’ the Sixth Amendment requires that they be found by a jury.” (citation omitted) (emphasis added)).
Likewise, in Florida, this Court has “always considered the right to jury trial an indispensable component of our system of justice.” Blair v. State, 698 So.2d 1210, 1213 (Fla. 1997). In fact, Florida’s first Constitution declared, “That the great and essential principles of liberty and free government, may be recognized and established, we declare: ... That the right of trial by jury, shall for ever remain inviolate.” Art. I, § 6, Fla. Const. (1838). This Court has consistently recognized the importance of a defendant’s right to a jury trial, calling it “indisputably one of the most basic rights guaranteed by our constitution.” State v. Griffith, 561 So.2d 528, 530 (Fla. 1990).
The underpinnings of Hurst v. Florida, requiring that the jury make all the factual findings necessary to impose a death sentence, are based on the critical right to a jury trial: one of the guarantees set forth in the Bill of Rights since our country’s—and this State’s—inception. The right to a jury trial not only ensures a defendant’s guilt is accurately determined, but also that any decision on the matter is made by a group of the defendant’s peers—as opposed to a member of the government. Our citizens place their trust in our criminal justice system in large part because the citizens themselves are the crucial element in determining a defendant’s guilt or innocence.
Majority op. at 17. In light of our recent holding in Hurst, emphasizing the fundamental constitutional significance of the right to trial by jury under both the United States and Florida Constitutions and the role unanimity plays in ensuring fairness and reliability in the imposition of death, I agree with the majority that the purpose of the new rule weighs in favor of retroactive application.
Further emphasizing the importance of the right to trial by jury, Justice Anstead explained in his concurring in part and dissenting in part opinion in Johnson v. State, 904 So.2d 400 (Fla. 2005), why Ring should not only apply in Florida but should apply retroactively:
The right to a jury trial is not only recognized as the most important right involving our justice system set out in our constitution, its roots rest in the most revered legal document of our Anglo-American legal tradition, the Magna Carta. Countless thousands of English and American patriots have recognized and defended the right of jury trial as the very foundation of our justice system. In 1762, David Hume, the English philosopher, wrote that “trial by jury is the best institution calculated for the preservation of liberty and the administration of justice that was ever devised by the wit of man.” Similarly, Thomas Jefferson declared in 1788, “I consider trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution.” See J. Kendall Few, In Defense of Trial by Jury 214, 311, American Jury Trial Foundation (1993).... Indeed, this Court’s first chief justice, *35 Chief Justice Douglas, eloquently assessed the importance of this right in 1848 when he spoke for a unanimous Court in declaring:
When however it is remembered with what jealous and scrupulous regard “the right of trial by jury” has ever been cherished and preserved by our Anglo Saxon ancestors, and by the Fathers of the revolution of 1776, a regard transmitted to us their descendants not only with unabated attachment, but if possible with increased interest and regard—a Magna Charta shielding every one in the enjoyment of life liberty and property: When these things are borne in mind and a Legislative act in its terms abridges this hallowed right, or its provisions are subversive of the principles of natural justice and against common reason and common right, the duty of the court, though unpleasant and even painful, is too obvious to be doubted or denied.
Flint River Steam Boat Co. v. Roberts, Allen & Co., 2 Fla. 102, 115 (1848).
Johnson, 904 So.2d at 427-28.
Turning to the extent of reliance on the old rule, which the majority states is the “most important factor” when determining whether the new rule constitutes a development of fundamental significance, the majority determines that this factor militates against a finding of retroactivity due to the number of defendants currently on Florida’s death row and the number of executions in this State since 1976. Majority op. at 17-18, 19-20. Presumably, then, under that same reasoning, if there were fewer defendants currently on death row and fewer executions in this State since 1976, this Court might have held Hurst to be fully retroactive. But, in fact, Witt does not elevate this factor above the others when conducting a retroactivity analysis because the three prongs are intertwined to assist the Court in determining when fairness must yield to finality.
I would conclude that Hurst creates the rare situation in which finality yields to fundamental fairness in order to ensure that the constitutional rights of all capital defendants in Florida are upheld.[32] Witt, 387 So.2d at 925; Ferguson, 789 So.2d at 312. As Chief Justice Strine of the Supreme Court of Delaware stated in his recent concurrence in Rauf v. Delaware, a decision that invalidated Delaware’s capital sentencing scheme in light of the United States Supreme Court’s decision in Hurst, and which the Delaware Supreme Court recently held applies retroactively under the more restrictive Teague[33] test:[34]
If U.S. Supreme Court jurisprudence has and therefore can turn on a determination that death is different, it is certainly appropriate to recognize that the decision to give death or life is the most important one that can be made in any *36 criminal trial, and that the Sixth Amendment right was understood as of its adoption and for much of our history as allocating that authority to the jury.
Rauf v. Delaware, 145 A.3d 430, 473 (Del. 2016) (Strine, C.J., concurring) (footnotes omitted).
Maintaining the focus on fairness, I turn to the third prong of the Sto-vall/Linkletter test: the effect on the administration of justice. As this Court stated in Witt, “society recognizes that a sweeping change of law can so drastically alter the substantive or procedural underpinnings of a final conviction and sentence that the machinery of post-conviction relief is necessary to avoid individual instances of obvious injustice.” 387 So.2d at 925. When determining whether someone lives or dies, requiring that a jury determine unanimously that the death penalty be imposed—after carefully determining which aggravators exist, weighing the sufficiency of the aggravators, determining that the aggravating factors outweigh the mitigating circumstances—“promotes a thorough and reasoned resolution,” thereby stabilizing capital sentencing by ensuring that sentences of death are constitutional.[35] Undoubtedly, the justice system would be affected if this Court applied Hurst retroactively to all defendants on death row in Florida, but I conclude that this impact does not justify the injustice that results from not granting relief to all eligible capital defendants presently on Florida’s death row.
For these reasons, I conclude that Hurst should apply to all defendants who were sentenced to death under Florida’s prior, unconstitutional capital sentencing scheme. The majority’s conclusion results in an unintended arbitrariness as to who receives relief depending on when the defendant was sentenced or, in some cases, re-sentenced. For example, many defendants whose crimes were committed before 2002 will receive the benefit of Hurst because they were previously granted a resentenc-ing on other grounds and their newest death sentence was not final when Ring was decided.[36] To avoid such arbitrariness and to ensure uniformity and fundamental fairness in Florida’s capital sentencing, our opinion in Hurst should be applied retroactively to all death sentences. Thus, I would apply Hurst retroactively to Asay.
Because I would apply Hurst to Asay’s case, I now turn to whether the Hurst error in Asay’s penalty phase was harmless beyond a reasonable doubt. On remand from the United States Supreme Court, this Court determined that such error is capable of harmless error review and set forth the test for such review. Hurst, 202 So.3d at 66-68. In Asay’s case, the penalty phase jury recommended death by a vote of nine to three. Because there was no special verdict, we do not know why the three dissenting jurors did not vote to recommend death—whether they did not find that sufficient aggravating factors existed or did not find that sufficient aggravating factors outweighed the mitigating circumstances, or whether three jurors otherwise determined that death for this twenty-three-year-old was *37 not the appropriate punishment. Thus, it cannot be said that the lack of unanimity was harmless beyond a reasonable doubt, and I would therefore conclude that Asay is entitled to a new penalty phase.

. Hurst v. State (Hurst), 202 So.3d 40 (Fla. 2016).

. Hurst v. Florida (Hurst v. Florida), _ U.S _, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).

. See Witt, 387 So.2d at 925 (“Considerations of fairness and uniformity make it very difficult to justify depriving a person of his liberty or his life, under process no longer considered acceptable and no longer applied to indistinguishable cases,’).

. See, e.g., Johnson v. State, 904 So.2d 400, n.14 (Fla. 2005) (Anstead, J., concurring in part and dissenting in part) (explaining other contexts in which this Court has granted retroactive application of new precedent).

. I agree with the majority’s denial of relief on Asay's second, third, and fourth claims respectively, and thus would not overturn Asay’s conviction. Majority op. at 10-11, 28-29.

. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

. Even under the majority’s holding today, relief should be granted to the two Florida death row inmates whose sentences were a result of a judicial override because the jurisprudence on the acceptability of judicial overrides has so dramatically changed since their sentences were finalized. Marshall v. State, 604 So.2d 799 (Fla. 1992); Marshall v. State, No. SC16-779 (pending); Zeigler v. State, 402 So.2d 365 (Fla. 1981); see Zeigler v. State, No. SC16-1498 (pending); see also Hurst v. Florida, 136 S.Ct. at 626 (Alito, X., dissenting) ("No Florida trial court has overruled a jury’s recommendation of a life sentence for more than 15 years.”); see also Asay, op. at 29 (Labarga, C.J., concurring).

. Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); see Asay, op. at 29-30 (Polston, J., concurring).

. See Powell v. Delaware, No. 310, 2016, 153 A.3d 69, 2016 WL 7243546 (Del. Dec. 15, 2016).

. Am. Bar Ass’n Death Penally Due Process Rev. Project Sec. of Inidivudal Rights & Resps., Report to the House of Delegates (Feb. 2015), http://www.americanbar.org/ conten1/dam/aba/uncategorized/Death_ Penalty_Representation/2015_my_l 08a. authcheckdam.pdf, at 3-4; accord Ferguson, 789 So.2d at 312.

. See, e.g., Johnson v. State, 44 So.3d 51 (Fla. 2010) (vacating the sentences of death and remanding for a new penalty phase hearing on a conviction from a murder in 1981). Johnson currently has an appeal pending before this Court where he claims entitlement to relief based on Hurst. See case No. SC14-1175.