695 So.2d 682 (1997)
Barry HOFFMAN, Petitioner,
v.
L. Page HADDOCK, etc. Respondent.
No. 90403.
Supreme Court of Florida.
May 30, 1997.
*683 Stephen M. Kissinger, Assistant CCR, Office of the Capital Collateral Representative, Tallahassee, for Petitioner.
Robert A. Butterworth, Attorney General and Barbara J. Yates, Assistant Attorney General, Tallahassee; and Harry Shorstein, State Attorney and Laura L. Starrett, Assistant State Attorney, Jacksonville, on behalf of The State of Florida; Fred D. Franklin, Jr., General Counsel and Howard M. Maltz, Assistant General Counsel, Jacksonville, on behalf of The City of Jacksonville and Duval County; and George L. Dorsett, Assistant County Attorney, Orange County Attorney's Office, Orlando, on behalf of Florida Association of County Attorneys, for Respondent.
PER CURIAM.
Barry Hoffman petitions this Court for writ of prohibition to prevent Judge L. Page Haddock from holding a postconviction evidentiary hearing on Hoffman's first-degree murder conviction and sentence of death because of a lack of funds in the budget of the Capital Collateral Representative (CCR). We have jurisdiction. Art. V, § 3(b)(7), Fla. Const. For the reasons expressed, we grant a stay of the evidentiary hearing in this matter until July 15, 1997.
The facts of this case are as follows. Hoffman was sentenced to death for a 1980 contract murder. That sentence was affirmed by this Court in 1985. Hoffman v. State, 474 So.2d 1178 (Fla.1985). In 1990, we concluded that the trial judge had erroneously denied Hoffman's Florida Rule of Criminal Procedure 3.850 motion without holding an evidentiary hearing and we remanded the case for an evidentiary hearing and public records request evaluation. Hoffman v. State, 571 So.2d 449 (Fla.1990). In 1992, we again remanded this case for an evidentiary hearing and specifically ordered that a hearing be held on his public records requests. Hoffman v. State, 613 So.2d 405 (Fla.1992). From the status report filed with this Court by the circuit court on this case, it appears that an amended motion to vacate judgment was filed on June 18, 1993, but has not been acted on because of "public records production litigation and requests for continuances from CCR due to understaffing." The public records production litigation referred to in the status report was Asay v. Florida Parole Comm'n, 649 So.2d 859 (Fla.1994), cert. denied, ___ U.S. ___, 116 S.Ct. 591, 133 L.Ed.2d 505 (1995), a consolidated action regarding records held by the clemency board. This postconviction proceeding was stayed during the pendency of that suit.
Judge Haddock was scheduled to hold an evidentiary hearing April 29, 1997, through May 2, 1997, on Hoffman's motion to vacate judgment. CCR, which represents Hoffman in his postconviction proceedings, asked Judge Haddock to again continue this case, this time asserting that CCR is without funds to pay the costs of the proceeding. Judge Haddock refused to grant the continuance.
In this petition, CCR asks that this Court issue a writ to prohibit Judge Haddock from holding the hearing unless Duval County or the City of Jacksonville is required to pay all costs associated with the hearing. In the *684 alternative, CCR asks this Court to issue a writ of mandamus directing Judge Haddock to continue the hearing until after the beginning of CCR's next fiscal year, which begins July 1, 1997.
In its petition, CCR asserts that, as of April 23, 1997, it had expended all its available funds for the 1996-97 fiscal year. According to CCR, it cannot possibly represent Hoffman at the April 29 hearing in this cause because it has no money for witnesses, costs, or even transportation and lodging for the litigation team. It asserts that this lack of funding is the result of a ten-year history of continual underfunding of CCR. Additionally, it contends that it has experienced a huge increase in case load and court proceedings due to the actions of this Court, the legislature, and other agencies, as well as the federal Anti-Terrorism and Effective Death Penalty Act of 1996, which imposes a one-year time limit on state prisoners in which to file a federal habeas petition. Based on these allegations, this Court stayed the evidentiary hearing and set this matter for emergency oral argument.
The State argues that relief should not be granted in this case because any deficit in funds is the result of irresponsible planning. While we do not disagree that the deficit may be the result of irresponsible planning, under the circumstances, we are compelled to conclude that this case must be continued until the beginning of the next fiscal year.
First, we cannot make a determination as to the available funds for this case given that, at the time of oral argument, the auditor's report was not yet complete. Moreover, we understand that, at this time, negotiations are being conducted with the Governor's office to determine whether additional funds for CCR will be forthcoming. Until a final report is submitted regarding the financial status of CCR, neither this Court nor the trial court can properly evaluate whether CCR can be compelled to participate in the hearing in this cause. CCR expressly agreed at oral argument, however, that it will be able to proceed with the hearing in this cause by July 15, 1997, because funds from the new fiscal year will be available.
Second, we cannot compel the City of Jacksonville and Duval County to pay the costs of this proceeding because, as CCR conceded at oral argument, the legislature has provided that CCR is to bear this responsibility. In general, counties are responsible for all costs necessary to operate the circuit and county courts not paid by the State. § 43.28, Fla. Stat. (1995). Under section 43.28, "counties shall provide appropriate courtrooms, facilities, equipment, and, unless provided by the state, personnel necessary to operate the circuit and county courts." This includes attorney's fees and costs of required counsel. See In re D.B. and D.S., 385 So.2d 83 (Fla.1980); Brevard County Bd. of County Comm'rs v. Moxley, 526 So.2d 1023 (Fla. 5th DCA 1988)(finding non-capital postconviction fees and costs for conflict counsel must be borne by county under section 43.28). In this type of case, however, chapter 27 expressly directs that CCR is to provide for the collateral representation of any person convicted and sentenced to death in this state and is to be responsible for the payment of all necessary costs and expenses. §§ 27.7001, 27.705(3), Fla. Stat. (1995). Given the specific directives contained in chapter 27, CCR is responsible for the costs of this proceeding and we cannot compel the City of Jacksonville or Duval County to pay the costs associated with this case.
Accordingly, we continue the stay granted in this cause until July 15, 1997, and we direct that the trial judge in this cause hold the evidentiary hearing within thirty days of that date. Because we continue the stay in this cause, we find it unnecessary to grant the requested writs.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES and ANSTEAD, JJ., concur.
HARDING, J., concurs with an opinion, in which SHAW, J., concurs.
WELLS, J., concurs with an opinion.
HARDING, Justice, concurring.
I concur with the majority opinion. Like Justice Wells, I, too, regret the long delays *685 that are often occasioned in processing these death penalty cases; however, the circumstances surrounding the delay in this case warrant consideration. At oral argument the State acknowledged that this case had been monitored by the trial judge throughout the proceedings since the rule 3.850 motion had been filed. In addition to matters related in the majority opinion, the delay was evidently occasioned, in part, by separate litigation involving Florida Department of Law Enforcement and whether it should disclose certain tape recordings which were necessary for the resolution of the matter pending before the trial court. The FDLE litigation was resolved by a consent order which released some recordings which had been withheld. Thereafter the trial court set this case for final hearing and the matter before us was filed. Granted, the defendant here did not file a motion to expedite the proceedings; however, the record does not reflect that the State ever sought sanctions against counsel for the defendant for unnecessary delays, nor were any of the trial court's rulings granting continuances ever challenged. Nonetheless, I am confident that this matter could have been resolved more expeditiously than it has been.
I conclude with the observation that this Court was never called to rule upon the reasonableness of the $6000 fee which counsel for the defendant was obliged to pay a witness, nor was any evidence presented as to whether it was or was not reasonable.
SHAW, J., concurs.
WELLS, Justice, concurring.
I agree with the majority that this Court is presently confronted with no alternative but to stay this case until July 15, 1997. However, I write to point out that this is a case study for the Commission created by the 1997 CCR Revision Act. This is a case in which, for various reasons, adjudication has been delayed far too long. The rule 3.850 motion which is to be heard in the evidentiary hearing was first filed in 1987. Moreover, the costs which created the need for the stay are of concern to me. The papers filed by CCR and questions at oral argument demonstrated that a part of the cost which CCR stated it could not pay was $6000 for a fee for an expert for one appearance at the evidentiary hearing. No attempt had been made to obtain this expert for a lesser cost or in a more cost-effective manner than a personal appearance.
With a Commission now created, it is my hope that executive and legislative oversight will be active and ongoing for this entire process. The mission of all participants in capital postconviction proceedings, including the Courts, the Attorney General, State Attorneys, and CCR must be to get the cases of those convicted of capital crimes adjudicated effectively and within a reasonable time period. In my view, the exorbitant period of time inmates presently inhabit death row is plainly a problem which deserves the attention and direction of all three branches of government. The purpose of postconviction proceedings can only sensibly be to remove from death row as soon as possible those inmates who are not properly there. The legitimate purpose clearly cannot be to avoid the lawful execution of a sentence as long as possible. The legitimate purpose of postconviction proceedings requires early adjudication of these cases.
The legitimate purpose of postconviction capital proceedings requires adequate funding. The Commission will be in a position to follow each of these cases and to report on an ongoing basis on the progress in cases, to analyze the reasons for cases being prolonged in being adjudicated, and to advise the legislature as to causes for delay and appropriate funding so that this legitimate purpose can be effectively and efficiently carried out.
The necessity for emergency stays such as this must be avoided.