706 So.2d 873 (1997)
Antonio Michael CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. 88368.
Supreme Court of Florida.
November 13, 1997.
Rehearing Denied March 12, 1998.
*874 Todd G. Scher, Chief Assistant CCR, Capital Collateral Regional Counsel, Miami, for Appellant.
Robert A. Butterworth, Attorney General and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
This is an interlocutory appeal of an order entered during postconviction proceedings brought on behalf of a death-row inmate. The order at issue addresses the inmate's entitlement to a competency determination during postconviction proceedings. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
The appellant, Antonio Michael Carter, was found guilty of two counts of first-degree murder. In accordance with the jury's recommendation, the trial court sentenced him to life in prison on one count and death on the other. The convictions and death sentence were affirmed by this Court in October 1989. Carter v. State, 576 So.2d 1291 (Fla. 1989), cert. denied, 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991). In November 1992, Carter filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. In March 1993, that motion was dismissed because it was not verified by Carter as required by rule 3.850(c). In October 1993, Carter's collateral counsel filed an amended rule 3.850 motion. Attached to the motion was a verification signed by counsel, alleging that Carter was incompetent. The State moved to dismiss the amended motion because it too had not been verified by Carter.[1] Ruling on the State's motion was deferred and the case was referred to the original trial judge.
Before the original judge ruled on the motion to dismiss, Carter's counsel filed an emergency motion for mental evaluation. In response to that motion, the judge ordered an expedited evaluation of Carter for the purpose of determining Carter's competency to proceed as well as the need for treatment to restore Carter's competence. Carter was evaluated by two mental health experts who determined that Carter was incompetent to proceed. However, the trial judge did not rule on the competency issue. Rather, a petition for involuntary commitment was ultimately granted by the circuit court for Union County, and Carter was committed to the Corrections Mental Health Institution (CMHI).
After Carter's discharge from CMHI in October 1994, the collateral proceedings continued. Carter's competency remained in question and the trial judge inquired of counsel as to the proper standard for determining Carter's competency to proceed in the rule 3.850 proceeding.
Carter's counsel maintained that the Dusky[2] standard, which applies to competency determinations at the trial level, should be used in determining competency during postconviction proceedings. The State took the position that Carter was not entitled to a competency determination. However, it is unclear whether the State relied on this Court's decision in Jackson v. State, 452 So.2d 533, 537 (Fla.1984), which held that a death-row inmate was not entitled to a determination of competency to proceed in postconviction proceedings.
After briefing and a hearing on the issue, the trial court announced that "there is a right to a [competency] determination" in postconviction proceedings and that the standard for making such a determination is "whether the defendant has a present ability to consult and communicate with postconviction counsel regarding factual matters at issue in his postconviction proceedings." According to the trial court, this standard is based on Justice Overton's concurring opinion in Jackson. In its order, the court further ruled that, under Justice Overton's concurring opinion, "a trial court should only be required to hold a competency hearing during postconviction relief proceedings when a capital defendant shows that there are specific factual matters at issue in those proceedings that require the defendant to competently consult with counsel." The court concluded that "[b]ecause there are factual *875 matters to be determined in [Carter's] postconviction proceedings, [Carter] must be reexamined in order to determine whether he meets the Jackson standard." Finally, relying on the United States Supreme Court's decision in Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), the court ruled that if it finds Carter to be incompetent, the proceedings should not be halted; rather, the court should appoint a guardian to act on Carter's behalf. Carter appealed, challenging the competency standard formulated by the trial court and the court's ruling that a guardian should be appointed if Carter is found to be incompetent.
It is a well-established principle of law that "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975); see also Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Scott v. State, 420 So.2d 595 (Fla. 1982); Lane v. State, 388 So.2d 1022 (Fla. 1980); § 916.12, Fla. Stat. (1995). This principle of law, while rooted in the common law, ensures a defendant's due process right to a fair trial. Drope, 420 U.S. at 171-72, 95 S.Ct. at 903-04. Florida Rule of Criminal Procedure 3.211(a)(1) codifies what is known as the Dusky standard of competence, that is, "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual, understanding of the pending proceedings." The rule 3.211 standard applies to "any material stage of a criminal proceeding." Fla. R.Crim. P. 3.210. However, postconviction proceedings, such as those brought under rule 3.850, are civil in nature and therefore not subject to rule 3.211. See Jackson, 452 So.2d at 536-37; accord Pennsylvania v. Finley, 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987) (recognizing postconviction relief is civil in nature). In holding that a defendant is not entitled to a judicial determination of his competence to assist counsel in seeking postconviction relief, this Court explained in Jackson:
[T]he designation of the criminal procedure rule [3.850] is a misnomer in that the proceeding is civil in nature, rather than criminal, and is likened to a combination of the common-law writ of habeas corpus and a motion for writ of error coram nobis.
452 So.2d at 537.
In Medina v. State, 690 So.2d 1241 (Fla. 1997), a majority of this Court recently declined to revisit the Court's decision in Jackson. However, a majority also agreed that Medina's rule 3.850 motion was successive, and "until there was a determination that there was an issue that warranted an evidentiary hearing, Medina was clearly not entitled to a competency determination for the purpose of counsel proceeding to a Huff [v. State, 622 So.2d 982 (Fla.1993)] hearing." 690 So.2d at 1248. Unlike the situations in Medina and Jackson, Carter's motion for postconviction relief is not successive and the trial court expressly found that there were factual matters to be determined in this case.
We now accept Justice Overton's concurring view in Jackson that a trial court must hold a competency hearing in a postconviction proceeding only after a capital defendant shows there are specific factual matters at issue that require the defendant to competently consult with counsel. See Jackson, 452 So.2d at 537. Thus, a judicial determination of competency is required when there are reasonable grounds to believe that a capital defendant is incompetent to proceed in postconviction proceedings in which factual matters are at issue, the development or resolution of which require the defendant's input. There can be no question that a capital defendant's competency is crucial to a proper determination of a collateral claim when the defendant has information necessary to the development or resolution of that claim. Unless a death-row inmate is able to assist counsel by relaying such information, the right to collateral counsel, as well as the postconviction proceedings themselves, would be practically meaningless. Accord People v. Owens, 139 Ill.2d 351, 151 Ill.Dec. 522, 564 N.E.2d 1184 (1990) (holding a defendant seeking postconviction relief must be competent *876 to participate in collateral proceedings in order to give meaning to legislation providing for collateral counsel); State v. Debra A.E., 188 Wis.2d 111, 523 N.W.2d 727 (1994) (holding postconviction defendant is entitled to competency determination to ensure meaningful postconviction proceedings).
Until such time as the Florida Rules of Criminal Procedure are amended to specifically address competency during capital collateral proceedings,[3] the rules for raising and determining competency at trial should be looked to. See Fla. R.Crim. P. 3.210-3.212. In considering the issue of competency to proceed in postconviction proceedings, the examining experts should follow the basic procedures set forth in Florida Rule of Criminal Procedure 3.211 and, to the extent that they are relevant to a postconviction competency determination, should consider the factors set forth in subdivision (a)(2), subdivision (B) of which specifically provides for consideration of "any other factors deemed relevant by the experts." The experts also should consider any areas of inquiry specified by the trial court.
If a postconviction defendant is found incompetent, claims raising purely legal issues that are of record and claims that do not otherwise require the defendant's input must proceed.[4] We caution that a finding of incompetency will not relieve collateral counsel of the duty to review the record for such claims and present them in a timely manner. We see no need for the appointment of a guardian or "next friend." Collateral counsel will be in a position to adequately represent the inmate's best interest, to determine which claims must be raised, and to make all decisions necessary to the proceedings. Accord Hamblen v. Dugger, 748 F.Supp. 1497, 1498 (M.D.Fla.1990) (denying next friend standing to CCR because it had not met requirement of showing real party in interest was unable to litigate own cause due to mental incapacity, lack of access to the court, or other disability); Durocher v. Singletary, 623 So.2d 482, 485 (Fla.1993) (quoting Whitmore, 495 U.S. at 163, 110 S.Ct. at 1727 to hold CCR had no standing to proceed as "next friend" of death-row inmate where CCR had not met burden of providing "an adequate explanationsuch as inaccessibility, mental incompetence, or other disabilitywhy the real party in interest cannot appear on his own behalf").
If collateral counsel believes that a death-row inmate is incompetent prior to the institution of postconviction proceedings, and such proceedings must be instituted on the inmate's behalf in order to meet the time requirements of rule 3.851(b), counsel may file a motion for postconviction relief pursuant to rule 3.850, without the inmate's signature, and attach a motion for competency determination and accompanying certificate of counsel that the motion is made in good faith and on reasonable grounds to believe that the defendant is incompetent to proceed. The motion and certificate shall replace the signed oath by the defendant that otherwise must accompany a rule 3.850 motion. See Fla. R.Crim. P 3.850(c), 3.987; See also Anderson v. State, 627 So.2d 1170, 1171 (Fla. 1993) (oath requirement applies to all rule 3.850 motions, whether filed pro se or by counsel). Waiving the rule 3.850 oath requirement where collateral counsel has a good faith belief that the defendant is incompetent will ensure postconviction proceedings are brought in a timely manner in capital cases and will allow to proceed valid claims that are of record or that otherwise do not require the defendant's input.
We adopt these procedures in the hope of ensuring the consideration of all viable collateral claims a death-row inmate may have, *877 thereby furthering society's interest in the proper imposition of the death sentence while at the same time promoting the timely commencement and resolution of postconviction proceedings. With this goal in mind, we reverse the order under review to the extent that it is inconsistent with this opinion and remand for further proceedings as set forth herein.
It is so ordered.
OVERTON, SHAW and HARDING, JJ., concur.
WELLS, J., concurs with an opinion, in which GRIMES, J., concurs.
KOGAN, C.J., and ANSTEAD, J., concur in result only.
WELLS, Judge, concurring.
I write to point out my view that the distinction between preconviction and postconviction competency to proceed which is delineated in this opinion should be required to be specifically pled as the basis for the invoking of a competency issue in a postconviction proceeding.
A motion of counsel for the defendant claiming that defendant is incompetent to proceed in postconviction proceedings in which factual matters are at issue must allege with specificity the factual matters at issue and the reason that competent consultation with the defendant is necessary in respect to each factual matter specified. The trial court shall initially determine whether consultation with the defendant is reasonably necessary in respect to the issues specifically alleged, and if the trial court determines such consultation is reasonably necessary, then the trial court is to proceed in accord with rule 3.210(b) to determine whether there should be a mental examination.
GRIMES, J., concurs.
NOTES
[1] The State has since waived the rule 3.850(c) verification requirement in this case.
[2] Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).
[3] We ask the Florida Criminal Procedure Rules Committee to propose rules that are in accord with this opinion.
[4] A vagueness challenge to the heinous, atrocious or cruel instruction based on the decision in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), is an example of the type of collateral claim that is of record and does not require the defendant's input. See, e.g., Lambrix v. Singletary, 641 So.2d 847 (Fla.1994). A newly discovered evidence claim based on the fact that an equally culpable codefendant was given a life sentence after the defendant's death sentence had been affirmed is another example of the type of claim that does not require the defendant's input. See, e.g., Scott v. Dugger, 604 So.2d 465 (Fla.1992).