793 So.2d 902 (2001)
MIAMI-DADE COUNTY, Appellant,
v.
Victor Tony JONES, Appellee.
No. SC00-1427.
Supreme Court of Florida.
August 23, 2001.
*903 Robert A. Ginsburg, Miami-Dade County Attorney, and Jason Bloch and Thomas A. Tucker Ronzetti, Assistant County Attorneys, Miami, FL, for Appellant.
Todd G. Scher, Litigation Director, and William M. Hennis, III, Assistant CCRC, Capital Collateral Regional Counsel-South, Fort Lauderdale, FL, for Appellee.
PER CURIAM.
Miami-Dade County ("the County") seeks review of a trial court order requiring it to pay for the expert witness services incurred in connection with the evaluation of Victor Tony Jones during a postconviction competency determination pursuant to Carter v. State, 706 So.2d 873 (Fla.1997). We have jurisdiction. See Art. V, § 3(b)(1), Fla. Const. For the reasons that follow, we affirm the trial court's ruling.

I. FACTS
This case concerns the issue of who bears the financial responsibility, the County or Capital Collateral Regional Counsel ("CCRC"), for the expert witness costs associated with the court-ordered competency evaluation of a death row defendant during postconviction proceedings. The controversy arose when CCRC, charged with the postconviction representation of death row inmate Victor Tony Jones, filed a motion for determination of competency pursuant to this Court's ruling in Carter. The trial court found that a competency evaluation was necessary, and asked each party to submit the names of two experts, but only from the court-approved list, pursuant to section 916.115(1), Florida Statutes (2000). CCRC suggested the appointment of Dr. Ruth Latterner, and the State suggested the appointment of Dr. Jane Ansley. The trial court appointed these experts, both of whom testified at Mr. Jones' competency hearing below.
Months later, CCRC filed an initial and then a renewed motion for payment of the competency expert fees. Attached to both motions were invoices from Dr. Latterner to CCRC.[1] These motions sought an order requiring the County to pay for Dr. Latterner's expert services based on the theory that "[b]ecause Dr. Latterner's evaluation was court-ordered, ... Mr. Jones' counsel is not obligated to pay Dr. Latterner's invoice" and that "Mr. Jones' counsel was required to choose an expert off the approved list of experts." The trial court granted the renewed motion. The County submitted a verified motion to vacate the order requiring payment by the County, arguing that CCRC was responsible for payment of Dr. Latterner's fees. The court conducted a hearing and entered an *904 order denying rehearing and holding the County financially responsible for the services provided by Dr. Latterner. The County filed the instant appeal.

II. ANALYSIS
Florida Rule of Criminal Procedure 3.851(d) governs the procedures by which competency hearings are to be conducted in postconviction cases. Rule 3.851(d), however, does not specifically designate the entity responsible for the expert witness fees incurred in the process of making the competency determination. We, however, find the answer in chapter 916 of the Florida Statutes.
Within chapter 916, the Legislature has codified an extensive framework to deal with the special needs of mentally ill or mentally deficient defendants. This statutory framework, which applies to all criminal defendants, indigent and non-indigent alike, includes specific provisions dealing with a defendant's competency. As a whole, this chapter makes clear the very serious governmental responsibility and interest to ensure that no criminal proceeding is conducted against a person who is incompetent. Of particular import in resolving the issue in this case is Part II of chapter 916, entitled Forensic Services for Persons Who are Mentally Ill, which addresses the training of mental health experts, the appointment and compensation of these experts, and the nature and scope of the competency evaluations of defendants who are alleged to be mentally ill. After careful review of this chapter, we determine that section 916.115, Florida Statutes (2000), dictates that the County has financial responsibility for the court expert witness cost at issue in this case.
Section 916.115 provides in pertinent part:
916.115 Appointment of experts.
(1)(a)....
(b) The court may appoint no more than three nor fewer than two experts to determine issues of the mental condition of a defendant in a criminal case, including the issues of competency to proceed....
. . . .
(2) Expert witnesses appointed by the court to evaluate the mental condition of a defendant in a criminal case shall be allowed reasonable fees for services rendered as evaluators of competence or sanity and as witnesses, which shall be paid by the county in which the indictment was found or the information or affidavit was filed.... The fees shall be taxed as costs in the case. In order for the experts to be paid for the services rendered, the reports and testimony must explicitly address each of the factors and follow the procedures set out in this chapter and in the Florida Rules of Criminal Procedure.
The nature and scope of the competency evaluation is outlined in the following provisions of section 916.12, Florida Statutes (2000). This section is the mirror image of the guidelines and parameters to be applied when rule 3.851(d) is involved. First, both the statute and the rule have the same criteria for determining competency to proceed (i.e., whether the person has the sufficient present ability to consult with counsel and whether the person has a rational and factual understanding of the proceedings). Compare § 916.12(2), Fla. Stat. (2000), with Fla. R.Crim. P. 3.851(d)(8)(A). Second, the statute and rule overlap with respect to the relevant factors to be considered by the expert in making determinations and drafting reports (e.g., whether the person understands the adversarial nature of the process and whether he or she is able to disclose to counsel facts pertinent to the proceeding). Compare § 916.12(3), Fla. *905 Stat. (2000), with Fla. R.Crim. P. 3.851(d)(8)(B). Finally, both the statute and the rule define the scope of the expert's report by delineating the same factors to be included in the report (i.e., the expert must report on the mental condition causing the incompetency, possible treatments, and the defendant's likelihood of attaining competence). Compare § 916.12(4), Fla. Stat. (2000), with Fla. R.Crim. P. 3.851(d)(9). It is evident from this overlapping scheme that a competency determination in both instances is based on the identical underlying criteria, requires consideration of the same factors, and contains the same parameters for the expert's evaluative report. As a result, it would be difficult to find that the County, which is clearly responsible for competency evaluations conducted pursuant to section 916.12, is not similarly obligated for the expert witness fees incurred during competency evaluations authorized by rule 3.851(d), which are fundamentally designed to protect the identical interests recognized under the statutory provisions.
The County maintains, however, that section 916.115 cannot provide a statutory basis requiring them to be financially obligated to cover the cost at issue in this case because this statute relates to "criminal" proceedings, whereas postconviction proceedings are "civil" in nature. We believe the County's emphasis upon the civil versus criminal distinction is misdirected. Specifically, in State ex rel. Butterworth v. Kenny, 714 So.2d 404, 409-10 (Fla.1998), we noted:
Technically, habeas corpus and other postconviction proceedings are classified as civil proceedings. Unlike a general civil action, however, wherein parties seek to remedy a private wrong, a habeas corpus or other postconviction relief proceeding is used to challenge the validity of a conviction and sentence. Consequently, postconviction relief proceedings, while technically classified as civil actions, are actually quasi-criminal in nature because they are heard and disposed of by courts with criminal jurisdiction.
(Citations omitted.) The criminal postconviction proceedings involved here may well be designated "civil," but they involve interests and considerations that are more closely aligned with those traditionally and fundamentally protected in criminal proceedings and recognized in chapter 916.
We also find support for our conclusion that the County is responsible for the costs at issue in this case in section 43.28, Florida Statutes (2000), which provides in full:
The counties shall provide appropriate courtrooms, facilities, equipment, and, unless provided by the state, personnel necessary to operate the circuit and county courts.
This section obviously makes counties responsible for costs that inhere in the operation of the courts. That is, section 43.28 requires that counties absorb expenditures which, by their very nature, are non-partisan and essential to the fundamental fairness and operation of the proceedings versus expenditures incurred in the course of partisan advocacy. We deal with the former situation in this case. First, Dr. Latterner was not independently hired by CCRC to evaluate Mr. Jones. Instead, the doctor was appointed by the trial court to act as a neutral expert and report to and advise the court. See Parkin v. State, 238 So.2d 817, 821 (Fla.1970) ("Experts appointed by the Court to ascertain mental capacity are neither prosecution nor defense witnesses, but neutral experts working for the Court, and their findings and opinions are subject to testing for truth and reliability by both prosecution and defense counsel."). Second, there is nothing more essential to the operation of a court *906 system, and to due process itself, than the mental competency of the defendants that are required to be adjudicated in the proceedings designed to evaluate criminal responsibility.
Although the County vehemently argues that this section is inapplicable, based on our decisions in Orange County v. Williams, 702 So.2d 1245 (Fla.1997), and Hoffman v. Haddock, 695 So.2d 682 (Fla. 1997), we find the County's reliance on those decisions to be misplaced. It is true that in Williams and Hoffman we declined to extend section 43.28, thereby declining to make the counties responsible for certain postconviction costs. However, those cases involved partisan advocacy costs and not those necessary and inherent to be implemented in a fundamentally fair system. For example, Hoffman dealt with, among other things, the costs associated with the transportation and lodging for the litigation team and costs related to defense witnesses. See 695 So.2d at 684. Similarly, Williams involved the costs incurred by an attorney providing pro bono representation to a death-sentenced prisoner. See 702 So.2d at 1247. This is also a partisan advocacy cost for which CCRC would have been financially responsible had pro bono counsel not volunteered his services.
Here, the situation and elements are far different. In this case, we have a neutral court-appointed expert owing no duty of loyalty or confidentiality to either party. Although CCRC brought the competency issue to the attention of the trial court, it was the trial court that ultimately concluded that Mr. Jones should be evaluated. The court subsequently sought the State's and CCRC's recommendation as to which experts would be appointed. Both parties were only allowed to suggest an expert from the court-approved list. Thus, CCRC did not independently seek out and hire Dr. Latterner.

III. CONCLUSION
After thorough review of the issue presented, we conclude that this case is governed by sections 43.28 and 916.115 of the Florida Statutes. As such, we hold that the County is responsible for the compensation of the neutral mental health experts appointed by the trial court to conduct a competency examination pursuant to Carter. The trial court's order is affirmed.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
QUINCE, J., concurs in result only.
WELLS, C.J., concurs in part and dissents in part with an opinion.
WELLS, C.J., concurring in part and dissenting in part.
I concur in the result that this county can be properly required to pay this cost under section 916.115, Florida Statutes.
I do not agree that this cost comes within section 43.28, Florida Statutes. I believe to so hold stretches too far the language of that statute.
NOTES
[1] The record does not reveal which entity paid for the services rendered by the other expert, Dr. Ansley. Dr. Ansley's invoice was directed to the trial court judge.