NORTHCUTT, Judge.
In this unusual case, Anthony D’Arcan-gelo seeks certiorari review of the circuit court’s order declining to determine his competency and to stay proceedings on his motion for postconviction relief. We grant the petition.
In 1982 a jury convicted D’Arcangelo of two counts of first-degree murder. The State endeavored to have him sentenced to death, but the penalty-phase jurors split evenly on the question. The trial court concluded that the appropriate punishment was life imprisonment, and it imposed that sentence.
At D’Arcangelo’s guilt-phase trial, the State presented testimony from an FBI agent that he performed a comparative bullet lead analysis (CBLA), comparing bullets recovered from the crime scene with unspent bullets discovered at D’Ar-cangelo’s residence. The agent found an association between the bullets from the two locations. He testified that “the bullets came from the same box of ammunition or another box of ammunition having the same composition.”
Many years later, in August 2008, an FBI laboratory director sent a letter to the Hillsborough County State Attorney’s office advising that the agent’s expert trial testimony overstated the significance of his conclusions. Based on this newly discovered information, D’Arcangelo filed a pro *1025 se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Some months later, he obtained legal counsel, who filed an amended motion.
D’Arcangelo claimed that the CBLA testimony was the only evidence that physically linked him to the crime and that, at the time of trial, neither he nor his attorney could have discovered that this evidence was unreliable. He asserted that if the discredited evidence had not been admitted, he likely would have been acquitted. D’Arcangelo asked the postconviction court to vacate his conviction and sentence and to grant him a new trial. Cf. Murphy v. State, 24 So.3d 1220 (Fla. 2d DCA 2009) (holding allegations in the prisoner’s rule 3.850 motion that he recently discovered the CBLA evidence presented at his 1995 trial had been discredited and that he would probably have been acquitted if the evidence had not been introduced could support relief under rule 3.850(b)(1)); Smith v. State, 23 So.3d 1277 (Fla. 2d DCA 2010) (same).
In late 2009 D’Arcangelo’s attorney began to suspect that he was incompetent, and she hired an expert to examine him. The expert confirmed counsel’s suspicions. Counsel then filed a simple motion seeking a stay of the rule 3.850 proceedings. The motion asserted that there was a substantial issue regarding D’Arcangelo’s competence and that due process required that he be competent during the postconviction process. The court denied the motion, relying on Carter v. State, 706 So.2d 873 (Fla.1997), for the proposition that in post-conviction proceedings a defendant’s competence is necessary only when a factual matter is at issue or when the development of such an issue would require the defendant’s input. In its ruling the court limited its focus to the question raised by D’Ar-eangelo’s rule 3.850 motion, i.e., whether the newly-discovered evidence discrediting the CBLA analysis would have resulted in a different outcome at trial, and it determined that the motion presented a legal issue, not a factual one.
Counsel thereafter filed another motion seeking the same relief, but this time describing the quandary that D’Ar-cangelo could face. The motion recounted that case law bearing on whether D’Arcan-gelo could be exposed to the death penalty after a retrial was not consistent. Compare Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981) (holding that a jury’s verdict of life imprisonment barred the possibility of the death penalty at a retrial); Arizona v. Rumsey, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) (barring death penalty on retrial when the trial judge acquitted the defendant), with Sattazahn v. Pennsylvania, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) (noting that a trial court’s dismissal of jurors unable to reach á unanimous verdict and its entry of a life sentence did not bar the death penalty on retrial). Thus, the motion argued, D’Ar-cangelo had a factual decision to make: Should he proceed with his rule 3.850 motion and potentially expose himself to the death penalty? Or should he play it safe, withdraw his challenge concerning the CBLA testing, and spend the rest of his life in prison? The court again denied the motion.
D’Arcangelo filed a timely petition for a writ of certiorari seeking to quash the postconviction court’s order. See State v. Ayala, 604 So.2d 1275 (Fla. 4th DCA 1992). We have stayed the proceedings on his motion for postconviction relief pending the disposition of his certiorari petition.
To assist us in determining whether to exercise our certiorari jurisdiction, we directed the State to file an “unequivocal response” to the question of whether it *1026 would be barred from seeking the death penalty if D’Arcangelo were to be granted a new trial. The State advised that “[biased upon the record, or lack, thereof, in this case, it is submitted that the State can go forward and seek the penalty on a retrial of this case.” Thus, D’Arcangelo’s dilemma is squarely before us.
In denying the motion for determination of competency and for a stay of the post-conviction proceedings, the circuit court relied on Carter, in which the supreme court established procedures addressing the incompetence of death-sentenced defendants in postconviction cases. See Carter, 706 So.2d at 876. Those procedures are now incorporated in Florida Rule of Criminal Procedure 3.851(g). It provides that a “death-sentenced prisoner pursuing collateral relief under this rule who is found by the court to be mentally incompetent shall not be proceeded against if there are factual matters at issue, the development or resolution of which require the prisoner’s input.” Fla. R. Crim. P. 3.851(g)(1). A competency hearing is required if “there are reasonable grounds to believe that a death-sentenced prisoner is incompetent to proceed and that factual matters are at issue.” Fla. R. Crim. P. 3.851(g)(3).
Carter is, indeed, instructive. But it does not directly control this case. Carter applies to incompetent death-sentenced prisoners only, as does rule 3.851. And as the Carter court noted, its purpose was to further society’s interest in the proper imposition of the death penalty while insuring a proper and timely resolution of post-conviction proceedings. 706 So.2d at 877. Rule 3.850, applicable in postconviction proceedings by prisoners who, like D’Ar-cangelo, are not sentenced to death, contains no incompetency procedures comparable to those set forth in rule 3.851.
Even so, Florida jurisprudence has long held that every individual has a natural right to due process, which embodies a fundamental conception of fairness. See Jones v. State, 740 So.2d 520, 523 (Fla.1999). In Luckey v. State, 979 So.2d 353 (Fla. 5th DCA 2008), a case involving a prisoner not sentenced to death, the post-conviction court denied a rule 3.850 claim even though the prisoner exhibited signs of incompetence at the ■ evidentiary hearing on his claim. The Fifth District reversed the denial of the claim, noting that although Carter was limited to death-sentenced defendants, basic due process considerations such as notice and an opportunity to be heard required a postconviction court to address a prisoner’s mental competence before proceeding with an eviden-tiary hearing. Id. at 356.
Luckey was consistent with Carter in one respect that is not as apparent in D’Arcangelo’s case: Luckey involved an evidentiary hearing on the factual issue of whether Luckey’s trial counsel had been ineffective by allegedly failing to warn him that he faced a term of life imprisonment as a prison releasee reoffender if he rejected the State’s fifteen-year plea offer. In other words, Luckey fell neatly on the “factual issue” side of the factual-legal dichotomy. drawn by the Carter court when it extended to death-sentenced postconviction petitioners the right to be competent only in proceedings involving factual issues.
D’Arcangelo’s counsel maintains that the decision whether to further pursue his rule 3.850 petition and possibly expose himself to the death penalty is a factual issue for purposes of Carter. It is tempting to agree — the question certainly does not present a legal issue to be decided by the postconviction court. But it is apparent that when outlining the right to be competent in capital postconviction proceedings, *1027 the Carter court had in mind factual matters “at issue,” i.e., fact issues to be determined by the postconviction court based on evidentiary presentations.[1] D’Arcangelo’s issue cannot be resolved by the court or by his attorney. The decision whether to go forward in his quest for postconviction relief must be his alone.
But even if D’Arcangelo’s dilemma does not fit squarely within the fact-at-issue limitation, there is reason to believe that the limitation does not, or should not, apply to his case. As mentioned, Carter was premised in part on the court’s goal of “furthering society’s interest in the proper imposition of the death sentence while at the same time promoting the timely commencement and resolution of postconviction proceedings.” Carter, 706 So.2d at 877. Here, society’s interest in carrying out the prisoner’s sentence is not a factor; D’Arcangelo was sentenced to life imprisonment, he has already begun serving that sentence, and he would continue serving that sentence during any delay in his post-conviction proceeding occasioned by a determination that he is incompetent.
For that reason, among others, it is unclear whether the Carter court would find that D’Arcangelo has the right to be competent at this postconviction stage. The court did not directly address this issue in the context of a noncapital case, but we note that the Carter opinion cited favorably to State v. Debra A.E., 188 Wis.2d 111, 523 N.W.2d 727 (1994), a case that was similar to D’Arcangelo’s in that significant respect. Carter, 706 So.2d at 876. In Debra A.E., counsel for a noncapi-tal postconviction relief petitioner requested a competency determination because he feared that his client was not competent to decide whether to proceed with her petition and possibly subject herself to a harsher, albeit noncapital, penalty. The Supreme Court of Wisconsin held that the petitioner was entitled to be competent in order to make that decision.
Competency is a contextualized concept; the meaning of competency in the context of legal proceedings changes according to the purpose for which the competency determination is made. Whether a person is competent depends on the mental capacity that the task at issue requires. One task required of defendants during postconviction relief is to make the decision to proceed with or forego relief.
523 N.W.2d at 732 (footnotes omitted). The court concluded that a defendant is incompetent to pursue postconviction relief “when he or she is unable to assist counsel or to make decisions committed by law to the defendant with a reasonable degree of rational understanding.” Id. (footnote omitted).
We do not suggest that the Carter court necessarily would recognize a right of competency for any postconviction petitioner who might face a harsher penalty after a retrial. But the very existence of the Carter decision is testament to the court’s recognition that “death is different.” Crump v. State, 654 So.2d 545, 547 (Fla.1995) (citing State v. Dixon, 283 So.2d 1, 17 (Fla.1973)). Unlike the case of a capital defendant, who has nothing to lose by pursuing postconviction relief, a life-imprisoned defendant who might face the death penalty after a retrial risks his life by going forward. This would not be merely a harsher punishment; it would be the harshest, irremediable penalty that our society can exact.
*1028 For the reasons described, we conclude that notions of due process and basic fairness — essential requirements of law — require that D’Arcangelo be competent when deciding whether to proceed on a course that might eventually cause him to be put to death. Therefore, we grant D’Arcange-lo’s petition and quash the order denying his motion for a determination of his competency and a stay of the rule 3.850 proceedings pending that determination or his restoration to competency.
Petition granted.
DAVIS and SILBERMAN, JJ., Concur.

. Arguably, the question of whether D'Arcan-gelo’s trial would have produced a different result if the CBLA evidence had not been admitted comes closer to the kind of factual issue contemplated in Carter.