# Supreme Court of Florida

_____

No. SC17-1975
_____

**GENGHIS NICHOLAS KOCAKER,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC18-878
_____

**GENGHIS NICHOLAS KOCAKER,**
Petitioner,

vs.

**MARK S. INCH, etc.,**
Respondent.

January 23, 2020

PER CURIAM.

Genghis Nicholas Kocaker appeals an order of the circuit court dismissing in part, denying in part, and granting in part his initial motion to vacate his conviction of first-degree murder and sentence of death, filed under Florida Rule of Criminal

Procedure 3.851.  Kocaker also petitions this Court for a writ of habeas corpus.

We have jurisdiction.  *See* art. V, § 3(b)(1), (9) Fla. Const.  As explained below,

we affirm the circuit court's postconviction order and deny Kocaker's habeas

petition.

## I. FACTS AND PROCEDURAL HISTORY

We previously affirmed Kocaker's first-degree murder conviction and death

sentence on direct appeal.  *Kocaker v. State*, 119 So. 3d 1214, 1233 (Fla. 2013).[1]

The evidence at trial showed that Kocaker killed Eric Stanton, a cab driver, by

slashing his throat and stabbing him, tying him up in the trunk of Stanton's cab,

and then setting the interior of the cab on fire.  Stanton died from carbon monoxide

poisoning, but the stab wound was a contributing factor and alone would have

killed him.  Stanton was breathing during the fire.

On the night of the murder, Stanton picked up Kocaker for a ride and then

went out of service twenty-eight minutes later.  The next morning, Kocaker called

911, reported that "there's a dead guy in a cab," and left the scene before law

enforcement arrived.  Our opinion in Kocaker's direct appeal characterized the

---

1. Kocaker raised the following four claims on direct appeal: (1) the evidence presented at trial was insufficient to support the first-degree murder conviction; (2) the death sentence was not proportionate; (3) Florida's protocol for execution by lethal injection was unconstitutional; and (4) Florida's capital sentencing process was unconstitutional.  *Id*. at 1224.

prosecution's case as consisting of "entirely circumstantial evidence." *Id.* at 1225. That evidence included: Kocaker's acknowledgement that he had been in Stanton's cab near the time of the murder; Kocaker's false statements about the circumstances surrounding his 911 call, his purported discovery of Stanton's dead body, and his whereabouts on the night of the murder; Kocaker's possession of new-found money soon after the time he had been in Stanton's cab; the presence of items in the cab—a gas can and a shirt soaked in Stanton's blood—that belonged to Kocaker; testimony of witnesses who saw Kocaker wearing a blood-stained T-shirt on the night of the murder; and incriminating statements that Kocaker made to another inmate, among them that Kocaker had "burned somebody" and that he wished he could kill his sister, "too." We will discuss additional facts (including Kocaker's actions between the time of the murder and his call to 911) as necessary in our consideration of Kocaker's claims in this appeal.

Kocaker timely filed his initial motion for postconviction relief, and together with that motion sought a determination of competency. The circuit court appointed experts to examine Kocaker, held an evidentiary hearing, and on March 28, 2016, entered an order finding Kocaker incompetent to proceed. The order committed Kocaker to the care of the Department of Children and Families, which administered competency restoration treatment at the South Florida Evaluation and Treatment Center (SFETC). On June 9, 2016, the SFETC informed the court that

Kocaker was competent to proceed. The court again appointed experts, held an evidentiary hearing, and this time found Kocaker competent.

Kocaker included ten claims in his rule 3.851 motion to vacate his conviction and sentence.[2] One of those claims asserted Kocaker's entitlement to relief under this Court's decision in *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), because the jury's recommendation of death in Kocaker's case was nonunanimous (11 to 1). The state conceded that claim, which caused Kocaker's remaining penalty phase claims to become moot. The circuit court vacated Kocaker's death sentence but summarily denied or dismissed Kocaker's remaining claims (either for mootness or on the merits).

---

2. (1) Trial counsel was ineffective during the jury selection phase of Kocaker's trial; (2) the state withheld evidence that state witnesses Antoine Powell, Stephanie Brzoska, and Paul Sands received deals in exchange for their testimony in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972); (3) the state violated Kocaker's Fifth Amendment rights when he was interrogated without being properly advised of his rights; (4) trial counsel was ineffective during the guilt phase of Kocaker's trial; (5) the state engaged in prosecutorial misconduct at the guilt and penalty phases of trial; (6) trial counsel was ineffective during the penalty phase of Kocaker's trial; (7) cumulative error; (8) Kocaker should be given a new sentencing procedure under *Hurst v. State*, 202 So. 3d 40 (Fla. 2016); (9) Kocaker should not be executed because he is severely mentally ill; and (10) Kocaker may be incompetent at the time of execution which would be a violation of his Eighth Amendment rights.

## II. POSTCONVICTION MOTION

### A. Competency Determination

Kocaker's principal claim on appeal is that the circuit court erred in finding him competent to proceed in postconviction. We disagree.

In *Carter v. State*, 706 So. 2d 873, 875 (Fla. 1997), this Court recognized a defendant's limited, due process-based right to a competency determination "when there are reasonable grounds to believe that a capital defendant is incompetent to proceed in postconviction proceedings in which factual matters are at issue, the development or resolution of which require the defendant's input." The burden is on the defendant to identify specific factual issues that require the defendant to competently consult with counsel. *Id.* We emphasized in *Carter* that our recognition of this limited right did not absolve collateral counsel of the responsibility to identify and to timely present claims "raising purely legal issues that are of record and claims that do not otherwise require the defendant's input." *Id.* at 876. Those claims must proceed even if a petitioner is incompetent.

Competency determinations in capital postconviction proceedings are governed by Florida Rule of Criminal Procedure 3.851(g), which codifies the limited right that we announced in *Carter*. The substantive standard for competence to proceed is "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and

whether the defendant has a rational as well as factual understanding of the pending collateral proceedings." Fla. R. Crim. P. 3.851(g)(8)(A). We review a circuit court's competency determination for abuse of discretion, which means that we will not disturb the court's conclusion "unless no reasonable person would take the view adopted by the trial court." *Huggins v. State*, 161 So. 3d 335, 345 (Fla. 2014) (quoting *Scott v. State*, 717 So. 2d 908, 911 (Fla. 1998)).

Consistent with this highly deferential standard of review, we have held that it is the circuit court's responsibility to resolve factual disputes between experts over whether a defendant is competent to proceed. *Id*. We look to the record for evidentiary support for the circuit court's determination. And where the court's resolution of an evidentiary conflict is supported by competent, substantial evidence, we will not find an abuse of discretion. *Id*.

Here the circuit court heard about Kocaker's competency from seven expert witnesses: the medical director of and a neuropsychologist from the SFETC; three court-appointed experts; and two defense experts. The SFETC experts opined that Kocaker was competent to proceed, specifically concluding that he did not have a mental illness requiring treatment, that he did not have brain damage or a neurocognitive disorder interfering with his competence, and that Kocaker's neurocognitive testing as a whole placed him in the low-average range. Similarly, one of the court-appointed experts, neuropsychologist Dr. Michael Gamache, also

opined that Kocaker was competent. Dr. Gamache testified that he saw no credible evidence that Kocaker suffered from a cognitive disorder. The remaining experts opined that Kocaker was incompetent to proceed. They variously testified that Kocaker suffered from a neurocognitive impairment, from schizophrenia, from brain disease, and from dementia.

The circuit court found the testimony of the SFETC experts and Dr. Gamache more persuasive. The court found it particularly important that the SFETC experts' opinions were informed by their review of daily observations of Kocaker over the several weeks that he was in treatment at the SFETC. The court also emphasized the results of Kocaker's testing, which showed that he had adequate recall. Finally, the circuit court personally viewed video recordings of each court-appointed expert's evaluation of Kocaker. That exercise led the court to observe that, "despite maintaining details about his personal life that conflict with the record, [Kocaker] remembers a remarkable amount of information about his version of the night of the offense and what occurred at trial."

Kocaker's challenge to the circuit court's competency determination essentially invites us to reweigh the evidence and to ourselves resolve conflicting expert testimony. But that is not our role. Instead, our task here is simply to determine whether any reasonable person could have reached the same conclusion as the circuit court. The court's order finding Kocaker competent easily satisfies

that bar.  Ample record evidence supports the circuit court's findings, and we see no abuse of discretion.

## B.  Summary Denial of Rule 3.851 Motion

"An evidentiary hearing must be held on an initial 3.851 motion whenever the movant makes a facially sufficient claim that requires factual determination." *Barnes v. State*, 124 So. 3d 904, 911 (Fla. 2013).  However, summary denial of claims raised in an initial postconviction motion is permissible if the record conclusively demonstrates that the defendant is not entitled to relief.  *Id*.  When we review the circuit court's summary denial of an initial rule 3.851 motion, we accept the movant's factual allegations as true and affirm the ruling "only if the filings show that the movant has failed to state a facially sufficient claim, there is no issue of material fact to be determined, the claim should have been brought on direct appeal, or the claim is positively refuted by the record."  *Id*.  The summary denial of a rule 3.851 motion presents a pure question of law that we review de novo.

### 1.  Ineffective Assistance of Counsel

Kocaker murdered Eric Stanton late on a Tuesday night.  The prior Sunday, Kocaker had met a crack cocaine dealer named Antoine Powell.  Powell sold Kocaker crack and introduced him to women who that night drank and did drugs with Kocaker at a motel.  When Kocaker ran out of money, he traded Powell some jewelry for more crack, with the understanding that Kocaker would buy back the

jewelry. Two days later, Kocaker got the necessary cash by robbing and murdering Stanton. Kocaker called Powell shortly after the murder to get his jewelry back, and they met twice that night—the first time after Kocaker summoned Powell to a parking lot across the street from the crime scene. Powell and two of the women he introduced to Kocaker testified at trial about their encounters with the defendant before and after the murder. Kocaker now argues that the circuit court erred by summarily denying his claim that trial counsel was ineffective for failing adequately to cross-examine these witnesses. We disagree.

"The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 691-92 (1984). To prevail on an ineffective assistance of counsel claim, a convicted defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id*. at 687. The prejudice component requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id*. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. Accordingly, a court's

assessment of whether the defendant has established prejudice "must consider the totality of the evidence before the judge or jury." *Id*.

Applying these standards here, and without deciding whether trial counsel's performance was deficient, we conclude that the record refutes any claim of prejudice resulting from the errors that Kocaker has alleged. We will consider the claims corresponding to each witness in turn.

*Antoine Powell*. Kocaker faults trial counsel for failing to impeach three aspects of Powell's trial testimony that purportedly were inconsistent with a statement Powell gave police in an interview two weeks after the murder.

First, Powell at trial testified that he met with Kocaker two separate times soon after midnight on the night of the murder. Powell testified that Kocaker was wearing a blood-stained white T-shirt at the first meeting and that Kocaker was wearing different clothes when they met the second time an hour or so later. In his September 2004 interview with law enforcement, Powell did not mention the change of clothes—in fact, the interviewers did not ask. Counsel's failure to bring this up on cross-examination could not have prejudiced Kocaker, however, because both Kocaker himself and another witness testified about the change of clothes. It was not a disputed issue in the trial.

Next, Kocaker takes issue with trial counsel's failure to impeach Powell's testimony about his second meeting with Kocaker on the night of the murder. At

- 10 -

that meeting, Kocaker rode in Powell's car to a 7-11 store. Powell testified at trial that when Kocaker got in the car, Powell noticed that Kocaker was carrying a bag with shoes, pants, and a shirt (according to the prosecution, the clothes Kocaker was wearing when he murdered Stanton). In his September 2004 interview, Powell told the police that he did not see what was in the bag.

We find no prejudice in counsel's failure to cross-examine Powell about this inconsistency. Kocaker himself testified to driving to the 7-11 with Powell, and he also testified that, around that time, he had put clothes and shoes in a bag. He claimed that the clothes in the bag belonged to someone else. Cross-examining Powell about this inconsistency in his testimony could not possibly have influenced the jury's verdict.

Finally, video footage played for the jury at trial showed that when Kocaker arrived at the 7-11 store, he went to a dumpster and threw something away. Kocaker himself acknowledged throwing "garbage or something" in the dumpster. At trial, Powell testified that Kocaker disappeared behind the dumpster at the 7-11 for a minute or two. Though it is unclear in context, it is possible to read Powell's September 2004 police interview as saying that Kocaker was by the dumpster for up to seven minutes. Counsel's failure to highlight this inconsistency in Powell's testimony does not undermine our confidence in the jury's verdict.

We also reject Kocaker's suggestion that these inconsistencies, taken together, would have been sufficient to materially undermine Powell's overall credibility as a witness. Much of Powell's trial testimony was corroborated by the testimony of other witnesses, by video and cell phone evidence, and by Kocaker's own testimony about his comings and goings before and after the murder. Viewed in light of all the evidence presented to the jury, any inconsistencies in Powell's testimony were insignificant.

*Stephanie Brzoska*. Stephanie Brzoska drove Antoine Powell to the meetings with Kocaker on the night of the murder. Both times that Powell and Kocaker met that night, Brzoska was there. In a deposition given in 2008, Brzoska described the first meeting, when Powell and Brzoska picked up Kocaker at a Walgreen's across the street from the crime scene. Brzoska said that Kocaker came up from behind the car and got in the back seat. She said that she "glanced at" Kocaker in the back of the car and that she would "never forget" that he was wearing a white T-shirt and blue jeans. From the Walgreens, Powell, Kocaker, and Brzoska drove to a laundromat; only Powell and Kocaker went inside. Asked if she had noticed any blood on Kocaker, Brzoska responded: "Honestly I really wasn't paying attention." Kocaker argues that trial counsel was ineffective for not asking Brzoska about this when she testified at trial.

Kocaker cannot establish prejudice from trial counsel's omission. Two other witnesses, both of whom had a much better view of Kocaker than Brzoska did, testified at trial that they saw blood on Kocaker's white T-shirt in the hours after the murder. Brzoska's deposition testimony—because the back seat of the car was dark, because she described herself as having only "glanced" at him there, and because she claimed not to have been paying attention when Powell and Kocaker left the car to talk in the laundromat—would have had only minimal impeachment value.

*Heidi Kalous*. Heidi Kalous was one of the women whom Antoine Powell introduced to Kocaker on the Sunday before the murder. That night, Kalous drank and did drugs with Kocaker in his motel room. Kalous testified at trial that Kocaker left the motel room at one point to buy beer. According to Kalous, Kocaker said as he left the room: "[I]f anything happen[s], there's a knife under the bed." Relying on the deposition testimony of another woman who was also in the hotel room at the time, Kocaker now claims that trial counsel should have established that the women found the knife under the mattress on their own, not because Kocaker told them it was there. This distinction supposedly would have allowed counsel to argue to the jury that the knife had been left in the motel room by the previous occupant. (We note that in closing argument the prosecution did not even mention Kalous's testimony about the knife.)

Even assuming that trial counsel could have presented the other woman's testimony to the jury, we see no prejudice. Kocaker concedes that the evidence would show that there was, in fact, a knife under the mattress in Kocaker's hotel room. There is no reasonable probability that counsel's implausible speculation about the ownership of the knife—an issue that the State in any event chose not to highlight—would have given the jury reasonable doubt about Kocaker's guilt.

For these reasons, we affirm the summary denial of Kocaker's ineffective assistance of counsel claims.

## 2. *Brady* Claim

Kocaker argues that the circuit court erred by summarily denying his claim that the prosecution violated its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Kocaker alleges that the state withheld evidence of deals with Antoine Powell and Stephanie Brzoska in exchange for their trial testimony. At the time of trial, both Powell and Brzoska were being prosecuted for probation violations. In their trial testimony, both denied having any deal with the state.

In order to establish a prima facie case of a *Brady* violation, Kocaker needed to show that: (1) there was evidence favorable to him—either exculpatory or impeaching; (2) the evidence was willfully or inadvertently suppressed by the state; and (3) the suppression of this evidence caused Kocaker to be prejudiced

- 14 -

because the evidence was material.  *State v. Woodel*, 145 So. 3d 782, 804 (Fla. 2014).

Kocaker bases his *Brady* claim on the fact that Powell and Brzoska ultimately received lenient treatment for their probation violations.  As to Powell, Kocaker also points to a note discovered after the trial in the state attorney's files.  Referring to a phone conversation with a relative of Powell, the note reads: "wants us to help Powell out w/charges, told her that we won't be able to discuss that until after trial."

These allegations are insufficient to state a prima facie *Brady* claim.  On its face, the state attorney's note contradicts the existence of a deal.  And we have previously held that the mere fact of lenient treatment, standing alone, does not show the existence of a deal between the state and a testifying witness.  *See Woodel*, 145 So. 3d at 806.  Thus, we affirm the summary denial of this claim. [3]

### III.  PETITION FOR WRIT OF HABEAS CORPUS

In addition to his challenge to the circuit court's order on his initial rule 3.851 motion, Kocaker has petitioned this Court for a writ of habeas corpus.  The petition raises two claims: ineffective assistance of appellate counsel and a claim that because of Kocaker's alleged mental illness, the Eighth Amendment prohibits

---

3.  We have also considered Kocaker's claim of cumulative error and find it without merit.

- 15 -

Kocaker's execution. Given that the circuit court has vacated Kocaker's death sentence, the latter claim is moot and we deny it on that basis.

Kocaker first alleges that appellate counsel was ineffective for not appealing the trial court's determination that Kocaker was competent to stand trial at the guilt phase. As we have explained, had it been appealed, the trial court's ruling would have been reviewed for abuse of discretion. The record shows that the trial court held a competency hearing before trial and that two of the three testifying experts opined that Kocaker was competent to proceed. Kocaker's habeas petition presents no argument as to why the trial court's pretrial competency determination was erroneous, much less an abuse of discretion. We deny this claim as insufficiently pled.

Kocaker also argues ineffective assistance of appellate counsel based on the failure to appeal comments by the prosecution that allegedly deprived Kocaker of a fair trial. Kocaker's habeas petition identifies three such comments. One was from the penalty phase, and we therefore need not consider it. The other two comments were from the guilt phase, but they were not objected to. Accordingly, the issue on appeal would have been whether the comments rose to the level of fundamental error. Fundamental error is "error that reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Brown v. State*, 124 So. 2d

481, 484 (Fla. 1960); *see also Calloway v. State*, 210 So. 3d 1160, 1191 (Fla. 2017). If the comments were not fundamental error, then appellate counsel could not be deemed ineffective for failing to challenge the comments on appeal. *See State v. Murray*, 262 So. 3d 26, 43 (Fla. 2018).

Neither of the identified comments rises to the level of error, much less fundamental error. First, during cross-examination of Kocaker, the prosecution said: "This is like the while the cat's away the mice will play. She was out of town. You went out and partied. Do whatever you wanted to do because nobody was around to hold you back, right?" The prosecutor said this after Kocaker had acknowledged being out doing drugs at a time when he was supposed to be home watching his nephew. In context, the prosecutor's remark was neither inflammatory nor unfairly prejudicial to Kocaker.

The other comment came during closing argument, when the prosecutor said: "There's nothing reasonable about any preferred treatment with Paul Sands. He just told you what he heard. He didn't even ask to speak to detectives when it happened. He was there and they came and they talked to him and he told them the truth." Paul Sands was a fellow inmate who at trial testified that Kocaker said that he "burned" someone and that he wished he could kill his sister "too."

We disagree with Kocaker's claim that the prosecution's comment constituted impermissible bolstering of Sands's testimony. While cross-examining

Sands, defense counsel had implied that Sands made up his testimony in the hope of gaining favorable treatment from the government. And in his own closing argument, defense counsel referred to Sands and several other prosecution witnesses as "people that are not worthy of your trust." Viewed in this context, the prosecution was merely rebutting and anticipating criticism of Sands's testimony. The prosecution's comment was an appropriate "fair reply" to the defense's attack on Sands's credibility. *See Wade v. State*, 41 So. 3d 857, 869 (Fla. 2010).

## IV. CONCLUSION

In light of the foregoing, we affirm the trial court's order on Kocaker's rule 3.851 motion, and we deny Kocaker's petition for a writ of habeas corpus.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Pinellas County,
    Joseph Anthony Bulone, Judge - Case No. 522004CF019874XXXXNO
And an Original Proceeding – Habeas Corpus

Eric Pinkard, Capital Collateral Regional Counsel, and Julissa R. Fontán, Chelsea R. Shirley, and Kara Ottervanger, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant/Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, and Christina Z. Pacheco, Assistant Attorney General, Tampa, Florida,

for Appellee/Respondent